# NO. 12-14-00104-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CHARLES MICHAEL WALKER, APPELLANT* | § | *APPEAL FROM THE 8TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | § | *RAINS COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant, Charles Michael Walker, appeals his conviction on two counts of the felony offense of indecency with a child. In his first issue, Appellant contends that the trial court erred in allowing an unqualified person to testify as an expert regarding the behavior of sexually abused children. In his second issue, Appellant maintains the trial court erred in admitting evidence whose probative value was substantially outweighed by its prejudicial effect. We affirm.

### BACKGROUND

A.C.'s parents divorced when she was three years old. She lived with her father and his new wife until she was nine. When she was nine, she came to live with her mother, who had married Appellant. She was made to feel like a stepchild when she lived with her biological father. But with Appellant and her mother, she immediately felt like one of the family. Appellant played with her, took her shopping, and bought her presents. Since her mother had to leave early for her job in Dallas and Appellant worked locally, she saw more of Appellant than her mother. Appellant always took her to school and to school activities. She said she loved Appellant, but he was very controlling. It appears that almost all family decisions were made by Appellant.

When A.C. was in the sixth grade, Appellant began fondling her breasts. A.C. testified that when she was fifteen, Appellant came into her room and had her lie face down on her bed while he lay on top of her in boxer shorts groping her breasts and "humping" on her until he ejaculated on her. She testified to a similar incident that occurred a year later. She also told the court that when she was eighteen, Appellant made her put his penis in her mouth in exchange for permission to go to a party. A.C. did not tell about these incidents because she was ashamed and embarrassed and she knew it would hurt her mother.

Appellant discouraged A.C.'s dating. She could remember having only four dates while she was in high school. Rebelling against Appellant's controlling nature, she left home after her high school graduation when she was eighteen. But Appellant found her and brought her home. When she was nineteen, she left home, married, and had a child. Appellant regularly visited A.C. and her child until these charges were brought in 2011.

Appellant denied all the allegations of misconduct. He thought he was being a good parent by being careful about who she dated. He and her mother wanted her to go to college before she married. She had always wanted him to adopt her, but her biological father refused to relinquish his parental rights. However, he adopted her when she became eighteen. He denied being controlling.

Before A.C. left home, and while he was still living with and married to A.C.'s mother, Appellant began a three year affair with Meredith Bilbo, a young woman half his age. The State called Bilbo to rebut Appellant's assertion that he was not controlling. Bilbo testified that she had become pregnant by Appellant, who coerced her into having an abortion. Through her testimony, the jury learned of other lurid, if not pertinent, complications that accompanied her affair with Appellant.

A.C. told no one of Appellant's abuse for seven years, when she tearfully related it to her boyfriend, a police officer. Although she begged him not to tell anyone, he told her that, as a police officer, he was duty bound to report criminal conduct. This prosecution resulted.

The jury deliberated for the better part of two days. Before the jury reached its verdict of guilty, the foreman first reported the jury was deadlocked at eight for guilt, four for not guilty, next at ten to two, and then eleven to one.

The jury assessed Appellant's punishment at imprisonment for ten years, but recommended that the sentence be suspended and that Appellant be placed on community

supervision. The trial court followed the jury's recommendation, but required Appellant to serve 180 days in the county jail as a condition of community supervision.

**EXPERT'S QUALIFICATIONS**

In Appellant's first issue, he maintains that the trial court abused its discretion in allowing Lauren Moore, a licensed professional intern, to testify as an expert regarding the phases and signs of child sex abuse because she lacked the proper qualifications.

### Standard of Review and Applicable Law

The trial court's decision to allow a prospective witness to testify as an expert is reviewed for abuse of discretion. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. TEX. R. EVID. 702. When the expert is from a nonscientific discipline (i.e., one involving technical or other specialized knowledge, experience, and training as opposed to the scientific method), the test for reliability is (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies on and/or utilizes the principles involved in the field. *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998). No rigid formula exists for determining whether a particular witness in qualified to testify as an expert. *Malone v. State*, 163 S.W.3d 785, 793 (Tex. App.—Texarkana 2005, pet. ref'd). "Licensure or certification in the particular discipline is not a *per se* requirement." *Harnett v. State,* 38 S.W.3d 650, 659 (Tex. App.—Austin 2000, pet. ref'd).

### Discussion

Appellant's sole argument at trial and on appeal is that Moore was unqualified to testify because she was a licensed professional counselor intern and not a licensed professional counselor.

The record shows that Moore had fulfilled all of the requirements to be a licensed professional counselor and at the time of trial was simply awaiting her certificate. She is a nationally certified trauma-focused therapist. She completed a three year internship and completed the required hours to become a licensed professional counselor. Moore had

performed 3,000 hours of practice at the Hunt County Children's Advocacy Center and had testified on two prior occasions. Certification in the subject discipline is not a prerequisite to expert testimony. *Harnett*, 38 S.W.3d at 659. In the instant case, all that was lacking for certification was receipt of the certificate. The trial court did not abuse its discretion in allowing Moore to testify as an expert. Appellant's first issue is overruled.

## RULE 403

In his second issue, Appellant contends that the trial court abused its discretion is admitting Meredith Bilbo's testimony that Appellant forced her to have an abortion because its prejudicial effect substantially outweighed its probative value.

### Standard of Review

We review the trial court's decision to admit or exclude evidence for abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but rather, whether the court acted without reference to any guiding rules or principles. *Montgomery*, 810 S.W.2d at 391.

### Applicable Law

Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403. Factors to be considered in weighing probative value against prejudicial effect include the following:

1. how compellingly evidence of the extraneous offense serves to make a fact of consequence more or less probable;

2. the extraneous offense's potential to impress the jury in some irrational but indelible way;

3. the trial time that the proponent will require to develop evidence of the extraneous misconduct; and

4. the proponent's need for the extraneous transaction evidence.

*Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).

4

A court of appeals should review preservation of error regardless of whether the issue was raised by the parties. ***Bekendam v. State***, 441 S.W.3d 295, 299 (Tex. Crim. App. 2014); ***Haley v. State***, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005). Rule of Appellate Procedure 33.1 states as follows:

> (a) *In General.* As a prerequisite to presenting a complaint for appellate review, the record must show that:
>
>> (1) the complaint was made to the trial court by a timely request, objection, or motion that:
>>> (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and
>>> (B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and
>> (2) the trial court:
>>> (A) ruled on the request, objection, or motion, either expressly or implicitly; or
>>> (B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

TEX. R. APP. P. 33.1(a).

An objection based upon Texas Rule of Evidence 403 is required in order to preserve error. ***Bell v. State***, 938 S.W.2d 35, 49 (Tex. Crim. App. 1996); ***Montgomery***, 810 S.W.2d at 389. A judge does not sua sponte engage in a Rule 403 balancing test, but does so only upon sufficient objection invoking Rule 403. ***Long v. State***, 823 S.W.2d 259, 271 (Tex. Crim. App. 1991). The issue on appeal must comport with the objection made at trial. ***Bekendam***, 441 S.W.3d at 300.

**Discussion**

Prior to trial, the State filed its Notice of Intent to Introduce Evidence of Extraneous Matters, which stated its intent to introduce evidence that Appellant coerced Meredith Bilbo into having an abortion. A.C., the victim, testified that she left home because Appellant was so controlling. On cross examination, Appellant denied he was controlling. At a hearing outside the jury's presence, the prosecutor told the trial court that since Bilbo had testified Appellant was controlling and Appellant denied it, the State was entitled to introduce evidence that Appellant "was so controlling he got her pregnant and then he forced her to have an abortion." Appellant's trial counsel argued that the evidence had no probative value, but the trial court overruled Appellant's objection.

5

In the presence of the jury, Appellant admitted that he had gotten Bilbo pregnant, but he denied that he had encouraged her to have an abortion. The State re-called Bilbo who testified that Appellant was very upset when he learned of her pregnancy, insisted on her having an abortion, and took her to the clinic where it was performed.

On appeal, Appellant argues that the trial court erred in admitting the evidence, because the danger of unfair prejudice from its admission far outweighed its probative value. Evidence that Appellant was controlling contributed nothing to proof of Appellant's guilt of the charged offense. It was relevant to no "fact of consequence" in the case and could not serve to make such a fact more or less probable. Therefore, Appellant contends, the evidence of Bilbo's pregnancy and abortion had negligible probative value. Appellant maintains the introduction into the case of such a highly charged, inflammatory issue as abortion was almost certain to provoke hostility toward him and suggest a decision by the jury on an improper basis.

The State insists the evidence of Appellant's coercive role in Bilbo's abortion was a proper attack on Appellant's credibility necessary to rebut his testimony on direct examination that he was not controlling.[1]

Although the question of preservation of error has not been raised, we are required to address it. *Bekendam*, 441 S.W.2d at 299. Appellant advances a compelling argument that a proper balancing test would have resulted in the exclusion of the challenged testimony. However, the trial court was never asked to conduct a balancing test under Rule 403. We have searched the record for an objection to the testimony sufficient to invoke Rule 403 and mandate a balancing test by the trial court. But the only objection to the evidence raised at trial was "there's no probative value to that," which the trial court overruled. The objection does not suffice to preserve error, and no error was preserved. *See Bell*, 938 S.W.2d at 49. Moreover, the issue on appeal does not comport with the objection raised at trial. *See Bekenham*, 441 S.W.3d at 300. Appellant's second issue is overruled.

## DISPOSITION

Having overruled Appellant's two issues, we *affirm* the judgment of the trial court.

---

[1] For the purpose of attacking or supporting a witness's credibility, specific instances of the conduct of the witness, other than conviction of crime as provided in Rule 609, may not be inquired into on cross examination of the witness or proved by extrinsic evidence. TEX. R. EVID. 608(b).



**BILL BASS**
Justice

Opinion delivered September 2, 2015.
*Panel consisted of Hoyle, J., Neeley, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

SEPTEMBER 2, 2015

NO. 12-14-00104-CR

**CHARLES MICHAEL WALKER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 8th District Court

of Rains County, Texas (Tr.Ct.No. 5267)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Bill Bass, Justice.
*Panel consisted of Hoyle, J., and Neeley, J. and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*