

NUMBER 13-17-00271-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

LUZ ALBERT HERNANDEZ,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                        Appellee.

On appeal from the 377th District Court
of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Justices Contreras, Longoria, and Hinojosa**
**Memorandum Opinion by Justice Contreras**

Appellant Luz Albert Hernandez was convicted of aggravated assault, a second-degree felony, and engaging in organized criminal activity, a first-degree felony. *See* TEX. PENAL CODE ANN. §§ 22.02(a)(2), 71.02 (West, Westlaw through 2017 1st C.S.). The aggravated assault count was sentenced as a first-degree felony due to a finding that

appellant had previously been convicted of robbery. *See id.* § 12.42(b) (West, Westlaw through 2017 1st C.S.). Appellant was sentenced to twenty-five years' imprisonment for each count, with the sentences to run concurrently. By seven issues on appeal, appellant argues: (1) the trial court erred by denying his motion for continuance; (2–3) certain evidence should have been excluded as inadmissible hearsay; (4) his right to confront witnesses was violated; (5–6) the evidence was legally insufficient to support certain elements of the offenses; and (7) the trial court improperly commented on the weight of the evidence. We affirm.

## I. BACKGROUND

Appellant and four other individuals—Jesse Ray Garcia, Thomas Sedillo Cano III, Johnathan Paul Escalona, and Florentino Tovar Jr.—were indicted for the assault of Anibal Resendez. The indictment alleged that the five defendants, acting with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, namely the "Sureños 13," caused bodily injury to Resendez by "repeatedly striking Resendez in his torso, appendages, neck and head with their hands, fists, feet and a golf club." *See id.* §§ 22.02(a)(2), 71.02.[1] The indictment further alleged that the defendants used or exhibited a deadly weapon during the commission of the assault.

Immediately prior to the beginning of appellant's trial in April 2017, defense counsel announced not ready and moved for a continuance in order to have DNA testing done on the golf club that was recovered from the crime scene and was allegedly used to assault

---

[1] The indictment contained three counts: the two counts on which appellant was convicted, along with directing activities of a street gang, a first-degree felony. *See* TEX. PENAL CODE ANN. § 71.023 (West, Westlaw through 2017 1st C.S.). All three counts were based on the alleged aggravated assault of Resendez. The directing activities of a street gang count was dismissed prior to appellant's trial.

2

Resendez. The prosecutor informed the trial court that no DNA testing had been done in this case and that it could be six months before any analysis of the golf club could be completed. The trial court denied the motion for continuance.

Tovar testified that he was affiliated with Sureños 13; that appellant, Garcia, Cano, Escalona, and Adam Arredondo were also affiliated with the gang; and that Sureños 13 had a hand sign that its members would use. He stated that the Sureños 13 had robbed a game room and had robbed people. When the prosecutor asked what game room had been robbed, defense counsel objected. During a hearing outside the presence of the jury, Tovar stated that Arredondo had told him about Sureños 13 burglarizing houses and robbing a game room "on Rio Grande by HEB." Defense counsel objected to this testimony on hearsay grounds. In response, the prosecutor argued that, because Arredondo was appellant's co-conspirator, the testimony was admissible as an admission by a party-opponent. The prosecutor further argued that "[i]t is against his penal interest as well." The trial court overruled the objection.

When the jury returned, Tovar testified that Arredondo was a member of Sureños 13 and, when the prosecutor asked Tovar what Arredondo told him about the game room robbery, defense counsel again objected on hearsay grounds, and the trial court again overruled the objection. Tovar then testified that Arredondo told him that Arredondo robbed the game room along with Emilio Zuniga and appellant, using two guns. Tovar also stated that Arredondo told him that Arredondo and Darren Trevino had burglarized a residence to steal firearms. Tovar confirmed that Zuniga and Trevino were also Sureños 13 members.

Tovar testified that, in the early evening of April 5, 2016, he went to a boot shop

3

next to his residence on Louis Street in Victoria, intending to confront the shop's owner because the owner was pointing in Tovar's direction and saying that Tovar was selling drugs. As Tovar was leaving the shop, he saw Resendez emerge from a back room. When Tovar left the shop, Escalona and Garcia were standing outside near some dumpsters. According to Tovar, Escalona was talking on the phone, and soon afterward, Cano and appellant arrived at the area. Tovar testified that, when appellant arrived, appellant and Cano asked Escalona where Resendez was, and Escalona told the men that Resendez was inside the shop. Appellant gave his car keys to Escalona, and he and Cano then entered the shop. At some point, Tovar saw a police vehicle with lights flashing and so he "[s]tarted knocking on the window telling [Cano and appellant] to get out of the shop." Through the shop window, Tovar observed appellant fighting with Resendez while the shop owner held Cano. He could hear "stuff being thrown around" inside the shop. The men then fought their way into the back room. Later, Cano and appellant came running out of the shop. Tovar did not see any of the men with a golf club.

Tovar stated that Resendez had "irritated" the gang by posting certain messages on Facebook. On cross-examination, he noted that Resendez posted videos in which he threatened to fight appellant. He acknowledged that he spoke to police officers at the boot shop later that evening.

Garcia testified that he, appellant, Cano, Escalona, and Arredondo are members of Sureños 13. He stated that he is currently under indictment for engaging in organized criminal activity and the assault of Resendez, and that he has entered a plea agreement with the State. Under the plea agreement, Garcia agreed to cooperate with the State and plead guilty to aggravated assault—with affirmative findings as to Garcia's prior

4

convictions, that a deadly weapon was used in the offense, and that Sureños 13 is a criminal street gang—in exchange for the State's recommendation that he be sentenced to seven years' imprisonment and a $5,000 fine. Garcia stated that Tovar, Cano, and Escalona also entered into plea agreements for charges stemming from the assault of Resendez.

Garcia testified, over defense counsel's objection, that Arredondo told him he had robbed a game room. According to Garcia, some gang members believed that Resendez was responsible for the arrests of Arredondo and Zuniga regarding the game room robbery. On April 5, 2016, Garcia observed Resendez go into the boot shop. According to Garcia, Escalona called appellant and Cano, and appellant and Cano arrived shortly thereafter. Garcia then observed appellant and Cano go into the boot shop and "assault" Resendez.

Tovar and Garcia each testified that appellant's Facebook page contains a photo of appellant and Garcia with the caption "Steady stepping Surenos thugs," as well as a photo of appellant with Trevino in which they are both displaying the gang's hand sign. They both testified that this indicated appellant and the other men were members of the gang.

Teresa Martinez, a crime scene detective with the Victoria Police Department, testified as to the chain of custody of the golf club recovered from the crime scene. She stated that a crime scene technician brought the club to a Department of Public Safety forensic laboratory in Corpus Christi on or about June 1, 2016, "but it wasn't tested" for DNA. When asked why it was not tested, Martinez replied: "They have a lot of—of other evidence in their custody that they got to work on. It just hasn't been worked on yet." She

5

stated: "I had a request from the DA's office to go pick it up for court today so they cancelled it so I could pick it up and bring it so it could be here today." After Martinez agreed with defense counsel that the "district attorney's office cancelled" the testing, the following exchange occurred:

THE COURT: That's not—I don't believe that the district attorney's office has cancelled that request.

[Defense counsel]: Judge, I believe the testimony stated that they got a request from the district attorney's office to pick it up yesterday and it was cancelled.

THE COURT: So the item is no longer going to be evaluated for the presence of DNA?

[Martinez:] It would have to be re-submitted.

THE COURT: All right.

Martinez agreed with defense counsel that, if the District Attorney's office had "really needed these results," it could have had the process expedited.

Manuel Moreno testified that he owns the boot shop where Resendez was attacked. He knew Resendez because Resendez, a boxer, had previously asked Moreno to sponsor him. On April 5, 2016, Resendez came into the shop to use the restroom. Later, appellant came in and accused Moreno of directing police officers to appellant's residence, which Moreno denied. Resendez then came out of the bathroom, at which point, according to Moreno, appellant and another man began to attack Resendez with their hands. Moreno testified that he attempted to hold one of the men back. The fight eventually spilled into the back room.

Moreno agreed that a golf club "was being swung" by appellant at Resendez but he was unsure if Resendez was struck with the club. He agreed that the golf club was capable of smashing someone's skull. He further agreed that, in a 911 call he made after

6

the fight, he said the fight was "mainly with hands, no weapons," but he explained that he meant there were no knives or guns used.

The State sought to introduce, as its Exhibits 18 and 19, certified copies of judgments in the cases in which Escalona had pleaded guilty.[2] Appellant's counsel objected on relevance grounds, but the trial court overruled the objection. The prosecutor later questioned a Victoria County deputy district clerk about the judgments. The deputy clerk testified over defense counsel's objection that, according to the judgments, Escalona had stipulated that he was a member of Sureños 13 and that Sureños 13 is a criminal street gang. The deputy clerk then testified, without objection, that Escalona had stipulated that the golf club was a deadly weapon.

Resendez testified that he went to Moreno's boot shop on April 5, 2016, in order to discuss Moreno's sponsorship. He used the restroom, and when he came out, "[s]ome guy named Tino" came in. Then, "two or three people," including appellant and Cano, started to hit, punch, and kick him. He stated appellant struck him with a golf club on his head and stomach, causing injury. He acknowledged that he had been involved in "disputes" with Sureños 13 and had been threatened by its members in the past. He further acknowledged that he previously told an officer that he had been struck twice by a golf club, once on his neck and once on his head. Resendez stated appellant later told him to drop the charges and threatened to hurt him if he did not.

Blair Cerny, a former officer with the Victoria Police Department, testified that Resendez identified appellant and Cano in a photo lineup as his assailants. Cerny further

_____

[2] The State called Escalona as a witness; however, he refused to testify and the trial court held him in contempt. Escalona's attorney stated that his client understood the plea agreement he entered into.

7

testified that Sureños 13 is a criminal street gang with three or more members, a chain of command, and gang symbols. He stated that Sureños 13 has been continuously associated with criminal activity in the Victoria area, including the robbery of a game room.

The jury found appellant guilty of engaging in organized criminal activity and aggravated assault, and it found that appellant had used a deadly weapon in the commission of the former offense. *See id.* §§ 22.02(a)(2), 71.02. Appellant was convicted and sentenced to twenty-five years' imprisonment for each count, with the sentences to run concurrently. Appellant filed a motion for new trial, which was denied by operation of law. *See* TEX. R. APP. P. 21.8(c). This appeal followed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Appellant argues by his fifth and sixth issues that the evidence was insufficient to support the jury's deadly weapon finding, and its finding that he acted as a member of a criminal street gang, respectively. We address these issues first. *See Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 201 (Tex. 2003) ("[W]hen a party presents multiple grounds for reversal of a judgment on appeal, appellate courts should first address issues that would require rendition.").

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Griffin v. State*, 491 S.W.3d 771, 774 (Tex. Crim. App. 2016); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We resolve any evidentiary inconsistencies in favor of the verdict,

keeping in mind that the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Brooks*, 323 S.W.3d at 899; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West, Westlaw through 2017 1st C.S.) ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony."). We determine, based upon the cumulative force of all of the evidence, whether the necessary inferences made by the jury are reasonable. *Griffin*, 491 S.W.3d at 774.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *Malik*, 953 S.W.2d at 240.

### 1. Deadly Weapon

A hypothetically correct jury charge in this case, consistent with the indictment, would instruct the jury to find appellant guilty of engaging in organized criminal activity if appellant, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, committed the aggravated assault of Resendez. *See* TEX. PENAL CODE ANN. § 71.02(a)(1). Such a charge would also instruct the jury to find appellant guilty of aggravated assault if he used or exhibited a deadly weapon during the commission of the assault. *See id.* § 22.02(a)(2).

9

Appellant does not dispute that a golf club constitutes a deadly weapon under the statutory definition. *See id.* § 1.07(a)(17) (West, Westlaw through 2017 1st C.S.) (defining "deadly weapon" as "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury"). Instead, appellant contends that the evidence was insufficient to establish that he used or exhibited it during the assault of Resendez. He notes that Tovar and Garcia each testified that they did not see a golf club used in the assault, and Moreno testified that appellant "swung" a club but was not sure if he actually hit Resendez with it. Appellant further notes that, while Resendez told officers that he was struck in the neck by a golf club, he testified at trial that he was struck on the head and stomach.

We find the evidence adduced at trial sufficient to support the deadly weapon finding. Resendez testified that appellant struck him with a golf club on his head and stomach. He acknowledged having previously told officers that he was struck with a club on his head and neck, but the jury is exclusive judge of the weight to be given to testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Brooks*, 323 S.W.3d at 899. Reconciliation of conflicts in the evidence is within the jury's exclusive province. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). The jury was entitled to credit Resendez's trial testimony despite the minor discrepancy between that testimony and his prior statement to police. Moreover, Moreno's testimony that appellant "swung" the club at Resendez supports the deadly weapon finding because it shows that appellant "exhibit[ed]" the club during the assault. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B).

Appellant's fifth issue is overruled.

### 2.    Member of a Criminal Street Gang

As noted, a hypothetically correct jury charge consistent with the indictment would instruct the jury to find appellant guilty of engaging in organized criminal activity if he committed the aggravated assault of Resendez "with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang." *Id.* § 71.02(a).

Appellant appears to concede that there was sufficient evidence to establish that he was a member of Sureños 13 and that Sureños 13 is a criminal street gang under the statutory definition. *See id.* § 71.01(d) (West, Westlaw through 2017 1st C.S.) (defining "criminal street gang" as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities"); *see also id.* § 71.01(a) (defining "combination" as "three or more persons who collaborate in carrying on criminal activities, although: (1) participants may not know each other's identity; (2) membership in the combination may change from time to time; and (3) participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations"). Appellant instead argues that there was "no credible evidence put forth that the assault of . . . Resendez was gang-related." He argues that there was no evidence he was ordered by another gang member to commit the assault; instead, he contends the evidence showed he and Resendez had a "long-standing personal disagreement that had nothing to do with the status of either individual in any alleged criminal street gang."

We again conclude that the evidence was sufficient in this regard. The evidence established that Tovar, Garcia, Escalona, Cano, and appellant were members of Sureños

11

13. Tovar, Garcia, and Resendez each testified that Resendez had been involved in disputes with members of the gang in the past. In particular, Tovar stated that Resendez had "irritated" the gang by posting messages on Facebook, and Garcia testified that gang members suspected Resendez was responsible for the arrests of Arredondo and Zuniga relating to the game room robbery. Finally, Tovar and Garcia each testified that Escalona made a phone call to appellant and Cano shortly before the men arrived at the scene. From this evidence, the jury could have reasonably inferred that appellant committed the assault of Resendez "with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang." *Id.* § 71.02(a); *Griffin*, 491 S.W.3d at 774. Appellant's sixth issue is overruled.

## B. Motion for Continuance

By his first issue, appellant argues that the trial court erred when it denied his counsel's oral motion for continuance made immediately prior to the beginning of trial. We review a trial court's ruling on an oral motion for continuance for abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007); *Munoz v. State*, 24 S.W.3d 427, 431 (Tex. App.—Corpus Christi 2000, no pet.). In order to show reversible error predicated on the denial of a pretrial motion for continuance, an appellant must demonstrate both that the trial court erred in denying the motion and that the lack of a continuance harmed him. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010); *Gallo*, 239 S.W.3d at 764 ("To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his motion.").

Defense counsel moved for a continuance in order to allow for the DNA testing of the golf club recovered from the crime scene. Appellant contends that the trial court

12

should have granted the motion because, regardless of whether testing revealed the presence of DNA, the results "would have dictated the direction Appellant's defense took with regard to the question of whether Appellant used a deadly weapon in the assault."

We conclude that the trial court did not abuse its discretion by denying the motion. Appellant contends that this was his first motion for continuance and it was the first trial setting; however, the docket sheet in the clerk's record indicates that there were three trial settings prior to April 2017, including one which was continued pursuant to a motion filed by appellant's counsel. Appellant did not seek DNA testing on the golf club at any of the prior settings, nor did he file a written motion to request such testing. In fact, the record reflects that the parties were unsure whether the club contained any testable biological material. On this record, we cannot conclude that the trial court erred in denying the motion for continuance. Therefore, we need not address whether the trial court's ruling resulted in prejudice to appellant. *See Gonzales*, 304 S.W.3d at 843; *Gallo*, 239 S.W.3d at 764; *see also* TEX. R. APP. P. 47.1. Appellant's first issue is overruled.

## C.    Admission of Evidence

Appellant's second and third issues contest the admission of evidence. We review a trial court's evidentiary rulings for abuse of discretion. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). We will not disturb the trial court's decision as long as it was within the "zone of reasonable disagreement." *Id.*

By his second issue, appellant argues that the trial court erred by overruling his objections to Tovar's testimony that Arredondo told him which game room had been robbed by Sureños 13 members. He contends that the statement was hearsay and does not fall under the exclusion from hearsay for co-conspirators' statements under Texas

13

Rule of Evidence 801(e)(2)(E).  *See* TEX. R. EVID. 801(e)(2)(E) (providing that a statement offered against an opposing party and "made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay).

Appellant does not address whether the statement falls under the exception to hearsay for statements against interest under Texas Rule of Evidence 803(24).[3]  That rule provides that a statement is not inadmissible because of the hearsay rule if it is a statement that:

(A)  a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability or to make the declarant an object of hatred, ridicule, or disgrace; and

(B)  is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

TEX. R. EVID. 803(24); *Bingham v. State*, 987 S.W.2d 54, 57 (Tex. Crim. App. 1999) (noting that, for a hearsay statement to be admissible under Rule 803(24), it must "tend[] to expose the declarant to criminal liability" and there must be "corroborating circumstances that clearly indicate the trustworthiness of the statement").

The statement at issue here satisfies both criteria.  Tovar testified that Arredondo told him that Arredondo had robbed the game room along with Zuniga and appellant.  This

---

[3] In responding to defense counsel's trial objection, the prosecutor alluded to both Rules 801(e)(2)(E) and 803(24) in arguing that the testimony was admissible.  *See Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008) ("Once the opponent of hearsay evidence makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible in spite of its hearsay character."); *see also Estrada v. State*, 313 S.W.3d 274, 313 (Tex. Crim. App. 2010) ("[I]t is the responsibility of the proponent to inform the court of the existence of an exception to the hearsay rule.").

statement clearly subjected the declarant, Arredondo, to criminal liability. *See* TEX. R. EVID. 803(24); *Bingham*, 987 S.W.2d at 57. And the fact that Arredondo made the statement to a fellow gang member—as opposed to law enforcement—is indicative of the statement's trustworthiness. *See Walter v. State*, 267 S.W.3d 883, 898 (Tex. Crim. App. 2008) (observing that "[s]tatements to friends, loved ones, or family members normally do not raise the same trustworthiness concerns as those made to investigating officers," because in the latter situation "the declarant has an obvious motive to minimize his own role in a crime and shift the blame to others"). The statement was therefore admissible as a statement against interest. *See* TEX. R. EVID. 803(24); *Dewberry v. State*, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999) (noting that "[a] statement which is self-inculpatory can be admissible against a defendant who was not the declarant of the statement"). Appellant's second issue is overruled.

By his third issue, appellant contends that the trial court erred by overruling his counsel's objection to Garcia's testimony that he overheard Escalona talking on the phone outside the boot shop. The objection was made during the following exchange:

| Q. [Prosecutor] | Okay. Did someone get on the telephone and call somebody? |
|---|---|
| A. [Garcia] | Yes, sir. |
| Q. | Who got on a telephone? |
| A. | Mr. Johnathan Paul Escalona. |
| Q. | Johnathan Paul Escalona? |
| A. | Yes, sir. |
| Q. | Okay. Now did he get on your phone, his phone or do you know whose phone? |
| A. | I'm not sure. |

15

Q. Okay. Do you know who he called?

A. I don't know whose phone he called but I know he got in contact with Mr. Thomas Cano, Luz Albert Hernandez.

Q. Okay. So you don't know what number he called but you knew he—who he was talking to?

A. Yes, sir.

Q. How do you know he was talking to them?

A. The general conversations they were having.

Q. Okay. Because of the conversation?

A. Yes.

Q. Did he tell Trey Cano and Luz Albert Hernandez anything about Anibal Abel Resendez being at the boot shop?

[Defense counsel]: Judge, objection. I don't think he can consider hearsay as to what the other party said.

THE COURT: Who was making the statement? Actually the objection is overruled. The question wasn't asking for the statement. The objection is overruled.

Q. [Prosecutor] Now let me caution you before you answer. That I ask—did you know who he was talking to? Did you hear the conversation? Okay.

A. [Garcia] I didn't hear the conversation but I knew who he was talking to by the way of the conversation.

Q. Okay. How did you know by way of the conversation?

A. The friendliness.

Q. The what?

A. The friendliness.

Q. The friendliness. Okay. In that conversation was it said that Anibal Abel Resendez was at the boot shop?

[Defense counsel]: Judge, objection. Leading.

16

THE COURT:          Objection is overruled.

A.          Yes, sir.

Q. [Prosecutor]          Okay.  At some point did someone arrive at that location by the dumpsters?

A.          Yes, sir.

Q.          Who arrived?

A.          Luz Albert Hernandez and Thomas Cano.

Appellant argues that Garcia's testimony regarding Escalona's statement was inadmissible hearsay and does not fall under the exclusion from hearsay for co-conspirators' statements.  *See* TEX. R. EVID. 801(e)(2)(E).

Again, we disagree.  Hearsay is defined as a statement which is offered in evidence "to prove the truth of the matter asserted in the statement."  TEX. R. EVID. 801(d)(2).  Here, Escalona's statement—that Resendez was in the boot shop—was not offered to prove that Resendez was actually in the boot shop.  Rather, it was offered to establish that appellant and Cano were informed of Resendez's presence shortly before they arrived at the scene and attacked Resendez.  Because the statement was not offered to prove the truth of the matter asserted, it was not hearsay and the trial court did not err by overruling defense counsel's objection.  Appellant's third issue is overruled.

## D.    Right to Confront Witnesses

By his fourth issue, appellant argues that the admission into evidence of State's Exhibits 18 and 19—certified copies of Escalona's judgments of conviction—violated his Sixth Amendment right to confront witnesses.  *See* U.S. CONST. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).  The judgments recite that Escalona pleaded guilty to the offenses of

17

engaging in organized criminal activity and aggravated assault. Appellant appears to argue that the judgments constitute testimonial hearsay because they necessarily imply that Escalona had stipulated to the facts that Escalona was a member of a criminal street gang and that a golf club had been used in the assault on Resendez. *See Crawford*, 541 U.S. at 68 (holding that admission of testimonial hearsay statements may violate the Confrontation Clause of the Sixth Amendment).

The State argues that the issue has not been preserved for review, and we agree. To preserve error for appeal, there must be a timely objection made at trial, and the issue raised on appeal must comport with the objection made at trial. TEX. R. APP. P. 33.1(a); *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014). Here, when the State sought to introduce Escalona's judgments of conviction into evidence, defense counsel objected only on the basis that they were irrelevant. *See* TEX. R. EVID. 401.[4] Because defense counsel did not object to the admission of Escalona's judgments on Sixth Amendment grounds, appellant's issue on appeal does not comport with the objection made at trial. *See Bekendam*, 441 S.W.3d at 300. We overrule his fourth issue for that reason.

## E. Improper Comments

Finally, by his seventh issue on appeal, appellant contends that the trial court commented on the weight of the evidence in violation of article 38.05 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.05 (West, Westlaw

---

[4] Later in the trial, when a deputy district clerk testified that Escalona had indeed stipulated to his membership in a criminal street gang and that a golf club is a deadly weapon, defense counsel objected on relevance and Confrontation Clause grounds. However, appellant does not argue on appeal that the trial court erred in overruling his objections to the deputy clerk's testimony; his arguments pertain only to the judgments of conviction.

18

through 2017 1st C.S.) ("In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case."). Appellant complains specifically of the trial court's remark—made immediately after Martinez agreed that the district attorney's office had cancelled the order for DNA testing on the golf club—that it did not believe that the district attorney's office cancelled the request for DNA testing. Defense counsel did not object to the trial court's remark or request a mistrial, but clarified that the Department of Public Safety forensic laboratory "got a request from the district attorney's office to pick it up yesterday and it was cancelled."

Appellant acknowledges that his trial counsel did not object to the complained-of remark, but contends that the remark constitutes "fundamental error" for which preservation is not required. *See Marin v. State*, 851 S.W.2d 275, 278 (Tex. Crim. App. 1993) ("Some rights are widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system. . . . A principle characteristic of these rights is that they cannot be forfeited. That is to say, they are not extinguished by inaction alone."). Appellant argues that, in making the complained-of remark, the trial court "was, in essence, telling the jury that Appellant's trial counsel was lying or misrepresenting the truth."

In *Marin*, the Texas Court of Criminal Appeals delineated three types of rights— "(1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are

19

to be implemented upon request"—and explained that procedural default "only applies to the last category." *Id.* at 279. After appellant filed his brief in this appeal, the court of criminal appeals held in *Proenza v. State* that "[t]here is no common-law 'fundamental error' exception to the rules of error preservation established by *Marin*." 541 S.W.3d 786, 793 (Tex. Crim. App. 2017). The *Proenza* Court further concluded that "the right to be tried in a proceeding devoid of improper judicial commentary is at least a category-two, waiver-only right." *Id.* at 801; *see id.* at 798–99 (noting that "compliance with Article 38.05 is fundamental to the proper functioning of our adjudicatory system, such that it should enjoy special protection on par with other non-forfeitable rights" (quotations omitted)). Accordingly, appellant did not waive the issue by failing to object at trial. *See id.* at 799 ("When a litigant perceives a violation of Article 38.05, it is not a foregone conclusion that his silence indicates a relinquishment of his rights thereunder. Silence may just as fairly indicate a litigant's calculation that, if the trial judge is indeed partial to the opposing side in her evidentiary commentary, she will likewise display partiality in ruling upon the Article 38.05 objection itself. An objection under these circumstances would be futile at best, and at worst could reinforce to the jury that the trial judge stands solidly in the corner of the opponent.").

We conclude that the trial court erred when it disputed Martinez's testimony that the district attorney's office had cancelled the order for DNA testing on the golf club.[5] The State contends that the trial court was justified in making the remark under Texas Rule of Evidence 611(a), which states the court "should exercise reasonable control over the

---

[5] The State concedes on appeal that the trial court was "mistaken," and "defense counsel was actually correct regarding how the DNA test was cancelled."

20

mode and order of examining witnesses and presenting evidence so as to," among other things, "make those procedures effective for determining the truth." TEX. R. EVID. 611(a)(1). The State contends that the trial court was merely attempting to "clarify matters" because it believed defense counsel was "asking a question based on a misunderstanding of the earlier testimony in the case." We disagree. Defense counsel asked Martinez directly if her testimony was that the district attorney's office cancelled the order, and Martinez replied, "Yes." There was no evidence adduced to the contrary, so there was nothing for the trial court to clarify.

Having found error, we must conduct a harm analysis to determine whether the error requires reversal. When an appellant complains that a trial court's comments were improper under article 38.05 and error is found, as here, the harm analysis is conducted pursuant to the standards prescribed for non-constitutional error. *See Proenza*, 541 S.W.3d at 801; *cf. Blue v. State*, 64 S.W.3d 672, 673 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (op. on remand) (applying harm standard applicable to constitutional error where appellant asserted that trial court made an improper comment during voir dire). Under that standard, we will reverse only if the error affected the appellant's substantial rights. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Simpson v. State*, 119 S.W.3d 262, 266 (Tex. Crim. App. 2003). We will not reverse a conviction for non-constitutional error if, after examining the record as a whole, we have "fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011).

21

We conclude that the trial court's comment, though erroneous, did not affect appellant's substantial rights. Appellant argues that the comment was "designed to poison Appellant's defense at trial and to strike at Appellant through his attorney," but we disagree. Though appellant claims that the golf club may have contained exculpatory evidence, the issue of whether the district attorney's office ordered the cancellation of the DNA testing on the club was not a significant issue at trial and did not bear upon any element of any charged offense. The only issue raised on appeal involving the DNA testing was whether the trial court erred by denying a continuance, and we have already concluded that it did not err in doing so. In any event, defense counsel immediately corrected the trial court after the comment was made and neither party mentioned it in their arguments. For these reasons, we have "fair assurance" that the error influenced the jury only slightly, at most, and was therefore harmless. *See id.* Appellant's seventh issue is overruled.

## III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
26th day of July, 2018