

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00564-CR

David Lee **YOUNG**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR2062
Honorable Laura Lee Parker, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Irene Rios, Justice

Delivered and Filed: April 8, 2020

AFFIRMED

Appellant David Young appeals his convictions for four counts of indecency with a child by contact.  We affirm the trial court's judgments.

### BACKGROUND

Following an outcry by the complainant and subsequent investigation by authorities, the State charged Young with one count of continuous sexual assault of a child and four counts of indecency with a child by contact.  Young pleaded not guilty to each count.  The jury returned a verdict on each count.  However, a question regarding whether the jury was unanimous with regard

to Count I arose, and ultimately, the State voluntarily dismissed Count I. The trial proceeded to the punishment phase. Based upon the jury's recommendation, the trial court sentenced Young to eight years' imprisonment for each count and ordered that Young serve the sentences concurrently.

ANALYSIS

**Unanimity and Election**

Young's first issue on appeal combines several contentions. A point of error is multifarious if it combines more than one contention in a single point of error. *Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990). A multifarious point of error presents nothing for review and may be overruled on that basis alone. *See County v. State*, 812 S.W.2d 303, 308 (Tex. Crim. App. 1989). However, we consider what appears to be the merits of Young's sub-issues in the interest of justice. *See Prihoda v. State*, 352 S.W.3d 796, 801 (Tex. App.—San Antonio 2011, pet. ref'd) ("As an appellate court, we may refuse to review a multifarious issue or we may elect to consider the issue if we are able to determine, with reasonable certainty, the alleged error about which the complaint is made.")

*Unanimity*

**Standard of Review and Applicable Law**

The first two discernible sub-issues contained within issue one relate to jury charge error. We review alleged jury-charge error in two steps: first, we determine whether error exists; and second, if error exists, we then evaluate whether sufficient harm resulted from the error to require reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *see also Villareal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). "Under *Almanza*, the degree of harm required for reversal depends on whether the error was preserved in the trial court." *Villareal*, 453 S.W.3d at 433. Charge error properly preserved

by objection will require reversal provided the defendant suffered "some harm." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013); *Ngo*, 175 S.W.3d at 743. On the other hand, charge error not properly preserved by objection must be "fundamental," and reversal is required only if the defendant suffered egregious harm. *Reeves*, 420 S.W.3d at 816; *Ngo*, 175 S.W.3d at 743–44. Egregious harm results from error that affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Arteaga v. State*, 521 S.W.3d 329, 338 (Tex. Crim. App. 2017); *Villareal*, 453 S.W.3d at 433.

Jury unanimity is required in all felony cases by the Texas Constitution, and it is required in all criminal cases by statute. TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. arts. 36.29(a), 37.02, 37.03; *see Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). Every juror must agree that "the defendant committed the same, single, specific criminal act." *Ngo*, 175 S.W.3d at 745. However, there is a distinction between a fact that is a specific element of the crime and one that is but the means to the commission of a specific element of the crime. *Id*. at 747. Jurors must unanimously agree on all elements of a crime in order to convict, but jurors need not agree on all underlying facts that make up a particular element. *Id*. When alternative theories of committing an offense are submitted to a jury, it is appropriate for the jury to return a general verdict of guilty if the evidence supports a conviction for the charged offense under any of the theories. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

**Discussion**

1. **Count I**

In his first sub-issue, Young contends the application paragraph contained in the jury charge specific to Count I "did not require that the jury unanimously agree on the specific acts of sexual abuse committed and the exact dates when the acts were committed … ."

Our review of the record shows that the jury charge regarding Count I about which Young complains tracks the language of the Penal Code. Young has presented no authority or argument to persuade us this jury instruction is erroneous. Further, the State dismissed Count I and, therefore, Young's complaints relating to Count I in the jury charge are moot. Because we find no error, we need not conduct a harm analysis.

## 2. Counts II through V

In his second sub-issue, Young contends the jury charge allowed for a non-unanimous verdict which denied him a fair and impartial trial. Young argues "the jury should have been instructed that in order to convict on each [c]ount, it must have been unanimous in believing that all of the elements of the offense alleged in the [c]ount were proven, beyond a reasonable doubt, as to each individual incident."

Here, the complainant testified that Young touched her breasts at least twenty times. The State charged Young with four counts of indecency with a child by contact. With the exception of the dates, each count was worded the same. The jury charge included a generic instruction that the verdict must be unanimous. However, in *Cosio*, the Court of Criminal Appeals found that such a generic instruction is not sufficient to prevent a non-unanimous verdict. *See Cosio*, 353 S.W.3d at 772. Under the circumstances before us, the jurors could have agreed that Young's conduct satisfied each of the indecency counts but disagreed as to which four of the twenty acts of indecency satisfied the respective indecency counts. Accordingly, charge error occurred. Young argues he properly objected. However, our review of the record indicates Young failed to object to the jury charge on this basis. Because Young also failed to raise a constitution-based jury charge error regarding Counts II through V, Young waived any constitution-based jury charge error he now purports to raise on appeal, and he is not entitled to a harm analysis under Texas Rule of Appellate Procedure 44.2(a). *See id*. at 777. Therefore, we review only for egregious harm.

*Reeves*, 420 S.W.3d at 816; *Ngo*, 175 S.W.3d at 743–44. In making an egregious harm determination, we consider: (1) the entire charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) the final arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *See Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008).

First, the jury charge, as described above, permitted non-unanimous verdicts based on the evidence presented during trial. The complainant testified that Young touched her breasts at least twenty times. The complainant described a pattern of how Young would touch her. First, Young would sit next to the complainant, rub her back and curve down her side. He would then touch the complainant's breasts and would sometimes touch her under her sports bra. The complainant's testimony regarding Young touching her breasts was not impeached, unlike the complainant's testimony regarding other alleged conduct. Further, the outcry witness, Rodney James, and Dr. Shelly Martin, the child abuse pediatrician, testified the complainant told each that Young had touched her breasts multiple times. The evidence presented during the trial indicated that the complainant's description of Young touching her breasts remained consistent throughout the investigation and pendency of the underlying case.

Next, we note that neither counsel, nor the trial court, exacerbated the jury charge errors by telling jurors they did not have to be unanimous about the same single, specific criminal act when rendering their verdicts. *Compare with Ngo*, 175 S.W.3d at 750–52 (the omission of a unanimity instruction caused egregious harm when the State and trial court both misstated the law concerning unanimity on multiple occasions). In fact, during its closing argument, the State told the jury, "[y]ou all have to make five different decisions on five different offenses that we've alleged."

The jury charge did not affect Young's defensive theory, which Young first presented during the opening statement — that the only evidence is the complainant's word and that the complainant lied. During the opening statement, Young informed the jury that the complainant's mother would testify her daughter fabricated stories. Further, during his closing argument, Young reiterated his defensive theory that the complainant was making up a story that would "grow each time she talked to somebody" in an effort to gain her mother's attention.

Finally, we consider other relevant information in the record. The record indicates the jury was not able to reach a conclusion regarding Count I, however, that has no bearing on the other counts as the evidence relating to Count I (touching of the genitals) was different from the evidence relating to Counts II through V (touching of the breasts). Ultimately, the jury believed that Young committed the offenses beyond a reasonable doubt. Had the jury believed otherwise, they would not have been able to reach a conclusion as to Counts II through V as they were not able to do as to Count I.

Having considered the entire jury charge, the state of the evidence, arguments of counsel, and other relevant information contained in the record, we determine it is logical to conclude the jury unanimously agreed that Young committed four separate instances of criminal conduct during each of the four incidents. It is thus probable that the jury's verdicts on Counts II through V were, in fact, unanimous. Accordingly, we conclude this record does not show actual or egregious harm, and we cannot say that Young was denied a fair and impartial trial.

### *Election*

In his third sub-issue, Young contends the State should have been required to elect between Count I, continuous sexual abuse of a child, and Counts II through V, indecency with a child by contact. Young urged his Motion to Elect before the presentation of evidence. The trial court denied Young's motion. Young did not re-urge his motion after the State rested.

**Applicable Law**

"When one particular act of sexual assault is alleged in the indictment, and more than one incident of that same act of sexual assault is shown by the evidence, the State must elect the act upon which it would rely for conviction." *Owings v. State*, 541 S.W.3d 144, 150 (Tex. Crim. App. 2017) (internal quotation omitted). "Once the State rests its case in chief, upon a timely request by the defense, the trial court must order the State to make an election." *Id*.

**Discussion**

Here, however, Young did not request an election when the State rested its case in chief. Young also did not request an election when the State closed its case. "A defendant's decision to elect is purely strategic and may be waived or forfeited." *Cosio*, 353 S.W.3d at 775. Because Young did not request that the State be required to elect at the appropriate time — once the State rested its case in chief — he waived any error regarding election.

Having determined each of Young's sub-issues lacks merit, we overrule issue one.

**Improper Conviction**

In issue two, Young contends the jury charge caused error because it allowed an improper conviction "based on alleged acts not charged without considering every essential element of the indictment beyond a reasonable doubt." Young argues that the evidence the State presented relating to Count I was improperly used against him with regard to Counts II through V. Young additionally argues that the inclusion of an instruction on Code of Criminal Procedure 38.37 section 2(b) allowed the jury to convict him "on something other, or less than evidence beyond a reasonable doubt of his guilt." According to Young, this caused jury error under *Sullivan v. Louisiana*, 508 U.S. 275 (1993). Young further relies on *Sullivan* as support for his argument that he was not required to object at trial to this instruction because the error was structural.

The jury charge contained the following instruction:

> In this case, if evidence has been introduced to the effect that there may have been an alleged act or acts of sexual misconduct between the defendant and the complainant, other than what is alleged in the indictment, such evidence is not to be considered unless you believe that such other act or acts, if any, was or were committed beyond a reasonable doubt. With regard to said other act or acts, if any, you are instructed that said evidence was admitted for any bearing it has on relevant matters, including the character of the defendant and such act, if any, performed in conformity with the character of the defendant, the state of mind of the defendant and the complainant, and the previous and subsequent relationship between the defendant and the complainant.

The above instruction is based on Texas Code of Criminal Procedure article 38.37, sections 1(b) and 2(b), which provide as follows:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including … the state of mind of the defendant and the child; and … the previous and subsequent relationship between the defendant and the child.
>
> …
>
> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2–a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) [continuous sexual abuse of a child] … may be admitted in the trial of an alleged offense described by Subsection (a)(1) [indecency with a child] … for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

TEX. CODE CRIM. PROC. ANN. art. 38.37, §§ 1(b), 2(b).

### *Applicable Law*

Under Texas Rule of Evidence 103, in "criminal cases, a court may take notice of a fundamental error affecting a substantial right, even if the claim of error was not properly preserved." TEX. R. EVID.103(e); *see also Blue v. State*, 41 S.W.3d 129, 131–32 (Tex. Crim. App. 2000) (acknowledging Rule 103 and holding that trial court's comments, "which tainted appellant's presumption of innocence in front of the venire, were fundamental error of

constitutional dimension and required no objection"). In *Sullivan*, the United States Supreme Court held that a jury charge misdefining the State's burden of proof as being less than beyond a reasonable doubt constitutes structural error and is never harmless error. *Sullivan*, 508 U.S. at 281–82. "[S]tructural error goes to a complete mis-direction or failure to instruct on the reasonable doubt standard … ." *Olivas v. State*, 202 S.W.3d 137, 143 (Tex. Crim. App. 2006) (holding failure to incorporate beyond-a-reasonable doubt burden of proof in deadly weapon issue was not structural error because jury instructions did not totally omit any reference to proof beyond a reasonable doubt, nor did those instructions mis-direct the jury concerning that burden of proof).

### *Discussion*

The jury charge in this case set forth the circumstances under which a person commits the offenses of continuous sexual assault of a child and indecency with a child by sexual contact. The charge properly defined "act of sexual abuse" and "sexual contact." The charge defined when a person acts intentionally or with intent, and knowingly or with knowledge.

The jury was instructed, with respect to Count I, to find Young guilty of continuous sexual abuse of a child as charged in the indictment, if the jury unanimously found "from the evidence beyond a reasonable doubt" that Young committed two or more acts of sexual abuse during a period between October 1, 2014 and January 31, 2015, that was thirty days or more in duration. With respect to Counts II through V, the jury was instructed to find Young guilty of indecency with a child by sexual contact (in each count), if the jury found "from the evidence beyond a reasonable doubt" that Young "did intentionally or knowingly engage in sexual contact with [the complainant], a female child younger than seventeen (17) years by touching the breast of [the complainant] with the intent to arouse or gratify the sexual desire of any person."

The jury charge also instructed the jury that "[a]ll persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a

reasonable doubt." Additionally, the jury was instructed that the State bore "the burden of proving [Young] guilty and it must do so by proving each and every element of the offenses charged beyond a reasonable doubt and if it fails to do so, you must acquit [Young]." Further, during closing arguments, the State reminded the jury that it had the burden of proving each element of the offenses for which it charged Young.

We conclude the jury charge here properly informed the jury that the State had to prove the elements of each offense, the charge set forth those elements, and the jury was instructed it could vote to convict only if it determined, beyond a reasonable doubt, that Young committed two or more acts of sexual abuse during the relevant time period. The complained-of instruction did nothing more than inform the jury that it could consider testimony regarding any "alleged act or acts of sexual misconduct between [Young] and the complainant, other than what [was] alleged in the indictment … for any bearing it had on relevant matters, including the character of the defendant and such act, if any, performed in conformity with the character of the defendant, the state of mind of the defendant and the complainant, and the previous and subsequent relationship between the defendant and the complainant." Therefore, we conclude the inclusion of this instruction did not mis-direct the jury as to the State's burden of proof and did not amount to "structural" error for which no harm analysis is necessary. We also conclude the trial court did not err by including this instruction in the jury charge; therefore, we do not conduct a harm analysis.

Issue two is overruled.

**Witness Testimony**

In issue three, Young contends the trial court erred by allowing the State to elicit "lay witness[1] testimony about the truthfulness of the complainant's sexual misconduct accusations and her credibility." Specifically, Young argues the outcry witness, CPS Investigator Rodney James, and child abuse pediatrician Dr. Shelly Martin improperly testified that the complainant's allegations against him were credible.

***Standard of Review and Applicable Law***

A trial court's decision to admit or exclude evidence is reviewed under an abuse-of-discretion standard. *See Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Beham*, 559 S.W.3d at 478; *Gonzalez*, 544 S.W.3d at 370.

An expert may not give a direct opinion on the truthfulness of a witness. *Brown v. State*, 580 S.W.3d 755, 765 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd); *see also Yount v. State*, 872 S.W.2d 706, 709–10 (Tex. Crim. App. 1993). This type of testimony is inadmissible "because it does more than 'assist the trier of fact to understand the evidence or to determine a fact in issue;' it *decides* an issue for the jury." *Yount*, 872 S.W.2d at 709 (emphasis in original) (quoting *Duckett v. State*, 797 S.W.2d 906, 910, 913 (Tex. Crim. App. 1990)). "[E]xpert testimony which *decides* an ultimate fact for the jury, such as a direct opinion on the truthfulness of the child, crosses the line and is not admissible under Rule 702." *Id*. at 708 (emphasis in original) (internal quotation omitted).

---

[1] In his heading, Young references lay witness testimony but within the argument portion he references expert witness testimony.

To preserve a complaint for appellate review, the complaining party must normally make a timely and specific objection and obtain a ruling from the trial court. TEX. R. APP. P. 33.1(a); *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014). "In addition, a party must object each time the inadmissible evidence is offered or obtain a running objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003).

Although we are not "hyper-technical" in determining whether error was preserved, "the point of error on appeal must comport with the objection made at trial." *Bekendam*, 441 S.W.3d at 300. Thus, "[a]n objection stating one legal theory [at trial] may not be used to support a different legal theory on appeal." *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (quoting *Johnson  v. State*, 803 S.W.2d 272, 292 (Tex. Crim. App. 1990)). Further, an appellate brief must state all issues presented for review clearly and concisely and include appropriate citations to authorities and to the record. *See* TEX. R. APP. P. 38.1(f), (i).

### *Discussion*

#### Dr. Martin's Testimony

In his brief, Young complains that the trial court erroneously allowed Dr. Martin's testimony regarding the complainant's credibility. However, Young does not identify nor direct us to specific portions of Dr. Martin's allegedly erroneous testimony contained in the record. Without record citations, we cannot determine whether improper testimony was admitted over proper objection. Accordingly, Young has waived his argument with regard to Dr. Martin's testimony. *See* TEX. R. APP. P. 38.1(i).

#### James's Testimony

With respect to James's testimony, Young points to two discernible instances he identifies as objectionable.

### 1. First Instance

During the first instance about which Young complains, the following exchange took place:

[State:] … did you have any reason to doubt her credibility?

[Defense]: Judge, I'm going to object. Relevance, and what he believes about a person is not relevant into what the jurors have to determine.

The Court: It's overruled.

[State:] You can go ahead.

[James:] Can I —

[Defense]: Object to speculation, Your Honor.

The Court: It's overruled.

[James:] Typically, when you – when you investigate or you talk to a – to an OV or a child, we're taught to look for certain signs, just things you noticed over time. I mean —

[Defense]: We object under *Daubert*, under 401, 403. We're now getting into truth-telling based on signs of deception and not deception.

The Court: Can you [re-ask] your question and confine your answer to his question. Okay?

[James:] Yes, ma'am.

[State:] Did you have any reason to doubt that she was telling you the truth?

[Defense]: Judge, we object under 403 that the probative of this is irrelevant, and under 404[(b)], the prejudicial effect outweighs the probative effect.

The Court: Overruled.

[State:] You can go ahead.

[James:] Say again.

[State:] Did you have any reason to doubt that she was telling you the truth?

[James:] No.

During this exchange, Young objected to James's testimony, citing to *Daubert*, which can be understood to be an objection based on Texas Rule of Evidence 702 relating to the admissibility of expert witness testimony. The trial court did not overrule the objection but rather directed the State to re-ask its question and instructed James to confine his answer to the State's question. The State subsequently asked James if he had any reason to doubt the complainant was telling the truth. Young objected to the State's question pursuant to Rules 403 and 404(b). However, Young did not object to the State's subsequent question on any basis, including Rule 702 or *Daubert*. Therefore, Young did not properly preserve error. *See Broxton*, 909 S.W.2d at 918; s*ee also Valle*, 109 S.W.3d at 509.

### 2. Second Instance

During the second instance about which Young complains, the following exchange took place:

[State:] After you compiled all your information, what did you do next?

[James:] … At that point, I talked to my supervisor over what we found, what was said, looking at all the different interviews, and then we come to a decision on – on whether this is a reason to believe, meaning that –

[Defense]: Judge, I'm going to – I'm going to take pause and object. And with the statement that he made previously about what we could and couldn't talk to, I think he's been admonished by the State not to say certain things. And we move for immediate mistrial, and they violated the rule of motion in limine.

The Court: That's denied. The jurors will disregard that statement made by the witness.

Thereafter, at a bench conference, the State informed the trial court and Young that it intended to ask James "when he reviews this with his supervisor, does he come up with a conclusion and forward that to law enforcement." Young argued "[t]hat is improper bolstering under 401, 403. It is irrelevant … ." The trial court instructed the State to "wrap it up and ask him whether he had enough information." The bench conference concluded, and the State asked James whether he had

enough information to forward the case to law enforcement for prosecution, and James answered, "Yes."

Even assuming, without deciding, that James's testimony was improperly admitted, "a prompt instruction to disregard will ordinarily cure the prejudicial effect and the jury is presumed to follow the trial court's instruction to disregard the improperly admitted evidence in the absence of evidence indicating the members of the jury failed to do so." *State v. Boyd*, 202 S.W.3d 393, 402 (Tex. App.—Dallas 2006, pet. ref'd); *see also Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) ("On appeal, we generally presume the jury follows the trial court's instructions in the manner presented."). "The presumption is refutable, but the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instructions." *Thrift*, 176 S.W.3d at 224. Here, Young has not rebutted the presumption that the jury followed the trial court's instruction. Therefore, we must presume the jury disregarded James's testimony as directed. Therefore, any error in allowing James's testimony was rendered harmless by the trial court's instruction.

Issue three is overruled.

### Instruction to Redeliberate

In issue four, Young complains the trial court erroneously instructed the jury to redeliberate all five counts and failed to declare a mistrial when Juror 34 informed the trial court after the jury reached its verdict that she was confused regarding Count I. Young further contends this caused an issue of jury coercion that denied him a fair and impartial trial.

### *Facts Relating to the Instruction to Redeliberate*

Following the presentation of evidence, the jury returned guilty verdicts on all five counts. In Count I, the jury found Young guilty of a lesser included offense. The trial court polled the

jury, and each juror verbally agreed that was his or her verdict. The jury separated and left for the evening. The punishment phase was scheduled to begin the next day.

The following morning, Juror 34 informed the trial court she had been confused regarding the verdict for Count I and stated that she did not agree with the verdict for that count. Over the State's objection, the trial court instructed the jury to continue deliberation solely on Count I. The State objected that the trial court had already polled the jurors, who declared they were unanimous. The State argued the jury had separated, the declarations made during the jury poll were controlling, and it would be erroneous for the jury to redeliberate. Young requested that the jurors redeliberate all five counts, not just Count I. The trial court denied Young's request, overruled the State's objection, and told jurors:

> So I have received some information that there — there is — may be some confusion about whether or not you-all reached a unanimous verdict in Count [I] of the indictment that you deliberated yesterday. So I am going to return you to deliberations on Count [I].

The trial court additionally provided the jury with a new verdict form for Count I. The jury subsequently informed the trial court it was deadlocked, and the trial court gave jurors a written supplemental charge, which stated in the first paragraph, "Your Presiding Juror has advised the Court that you have not been able to reach a unanimous decision regarding Count I of the Indictment. In connection with such communication I advise the Jury as follows … This jury verdict must be unanimous." The trial court instructed the jury to continue deliberations. The jury later again notified the trial court it was unable to reach a unanimous decision. The trial court informed the parties it was "inclined to grant a mistrial as to that count, and then just proceed to the punishment on the other counts." Young agreed and asked that the trial court declare a mistrial as to Count I. The State then informed the trial court it would move to dismiss Count I so as to

avoid a mistrial. The trial court granted the State's motion to dismiss Count I, and the trial proceeded to the punishment phase on Counts II through V only.

### *Discussion*

As noted above, the record indicates Young argued that the jury should be directed to redeliberate all five counts, not just Count I. The record further indicates the trial court directed the jury to redeliberate only Count I. Accordingly, Young's argument, which specifically complains of the jury redeliberating all five counts does not have any basis in the record before us. *See* TEX. R. APP. P. 38.1 ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

Issue four is overruled.

**CONCLUSION**

For the above reasons, we affirm the judgment of the trial court.

Irene Rios, Justice

DO NOT PUBLISH