

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD–0452–13

### STEPHANIE LYNN BEKENDAM, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S AND APPELLANT'S PETITIONS
### FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### WICHITA COUNTY

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., and JOHNSON, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined. Price and Womack, JJ., concurred.

## O P I N I O N

Appellant, Stephanie Lynn Bekendam, was convicted of driving while intoxicated and sentenced to 20 years in prison and ordered to pay a $10,000 fine. She appealed, claiming that the trial court erred in admitting the expert testimony of the Department of Public Safety ("DPS") forensic scientist who tested the blood sample and issued the toxicology report. The court of appeals held that the trial court did not abuse its

discretion in admitting the testimony. *Bekendam v. State*, 398 S.W.3d 358 (Tex. App.–Fort Worth 2013). Appellant filed a petition for discretionary review arguing that the court of appeals incorrectly applied the law for admissibility of expert testimony, misconstrued Rule of Evidence 702, and decided an important question of law that has not been settled. The State filed a cross-petition, claiming that the court of appeals failed to address its argument that Appellant's error was not preserved for review.

We will hold that the issue was preserved for review and overrule the State's ground. We will also overrule Appellant's grounds for review and affirm the court of appeals.

**FACTS**

Appellant ran a red light and hit another vehicle. Appellant and the two occupants of the other vehicle were injured and were taken to the hospital. An EMT and a nurse reported an odor of alcohol on Appellant's breath, so her blood was drawn at the hospital and was tested for alcohol. No alcohol was detected. The State requested testing for drugs and the test was positive for cocaine. The DPS forensic scientist confirmed the results with a second test, which showed traces of both cocaine and a metabolite which can enter the bloodstream only by consumption of cocaine.[1] However, the toxicology report did not include the trace amount of cocaine because it was below the reportable

---

[1]The first test conducted was the Enzyme-Multiplied Immunoassay Technique, or EMIT, which tests for the presence of any one of six classes of drugs. The second test, the Gas Chromatograph Mass Spectrometer, or GCMS, determines the specific drug and the amount of the drug that is in the blood sample.

cutoff allowed by DPS laboratory policy. The State called the forensic scientist to testify as an expert at Appellant's trial. The defense filed a motion in limine, requesting that the trial court hold a hearing to determine the relevance and reliability of the expert testimony offered by the State. The trial court held a *Daubert/Kelly* hearing to determine if the expert testimony was admissible. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). At the hearing, the expert testified that Appellant's blood contained cocaine at the time of the traffic accident. However, she stated that she did not include the cocaine in her toxicology report because the trace level was below DPS's reportable cutoff point. The trial court found the expert's testimony to be "reliable and relevant" and overruled the defense objection.

At trial, the expert testified before the jury that she saw trace amounts of cocaine in Appellant's blood that were below the limit that she was allowed to report. The defense objected to the admission of the written toxicology report and to the expert's testimony several times on the basis of relevance, but the trial court overruled the objections and allowed the expert to continue. The expert stated that the amount of metabolite she detected was large and was consistent with a large amount of cocaine use or a habitual use of cocaine. She testified that, due to the short half-life of cocaine and the fact that it degrades in the blood tube, it was her opinion that Appellant would have had cocaine in her bloodstream at the time she ran the red light and caused the traffic accident.

The jury convicted Appellant of driving while intoxicated and sentenced her to twenty years' confinement and ordered her to pay a $10,000 fine.

## COURT OF APPEALS

Appellant appealed, arguing that the trial court erred in allowing the expert to testify that a trace amount of cocaine was present in the blood sample and that Appellant would have had cocaine in her bloodstream at the time of the collision. Appellant argued that the expert failed to follow DPS standards and procedures by testifying that she found trace amounts of cocaine in Appellant's blood sample, and that the testimony was unreliable and irrelevant. The court of appeals reviewed the trial court's decision for an abuse of discretion. The court of appeals considered the *Kelly* standards for admissibility of scientific evidence, focusing on whether the scientific technique was properly applied. Appellant's argument was that the expert's failure to follow DPS policy regarding reporting trace amounts of cocaine resulted in an unreliable and irrelevant opinion and the expert did not explain why her failure to follow policy was still reliable methodology or based on facts that would be relied upon by experts in the field. The court of appeals disagreed and noted that the tests used to evaluate the blood sample, the EMIT and GCMS, were the scientific techniques applied by the expert. *Bekendam*, 398 S.W.3d at 363. Because the screening and confirmation tests are generally accepted in the scientific and judicial communities, the court of appeals determined that the trial court's decision to allow the expert testimony was within the zone of reasonable disagreement. The court of

appeals overruled Appellant's issue and affirmed the trial court's judgment. *Id*. at 363-64.

Writing for the dissent, Justice Walker stated that she would have held that the trial court abused its discretion in allowing the expert to testify that she saw trace amounts of cocaine in an amount that fell below the level that is reportable under DPS standards. The dissent says that there is no distinction in the failure to follow the DPS policy and the failure to properly apply the GCMS technique at the time of testing. *Id*. at 367. The expert followed DPS standards in her written report and did not include the trace amount of cocaine, but then at trial, she was allowed to testify that the test showed an unreportable trace amount of cocaine, which she told the jury was proof that Appellant used cocaine not long before the blood sample was taken. The dissent points out that if a trace amount is too unreliable to be included in a written report, it is just as unreliable when presented verbally. *Id*. The State presented no evidence that GCMS test results of trace amounts of cocaine below the DPS reportable limit are reliable. Thus, the dissent says that the evidence should have been excluded and the trial court abused its discretion by allowing the expert to testify. *Id*.

Appellant filed a petition for discretionary review raising the following three grounds for review:

> (1) The Court of Appeals committed error by incorrectly applying the law for admissibility of expert opinion testimony in concluding that the trial court did not abuse its discretion in allowing the testimony. The ruling conflicts with the opinion of the Court of Criminal Appeals in the issue in

*Layton v. State*, 280 S.W.3d 235, 241 (Tex. Crim. App. 2009), which states that the party offering expert testimony must prove that the expert testimony being offered is reliable and relevant by clear and convincing evidence, and *Gobert v. State*, AP-76,345, 2011 WL 5881601 (Tex. Crim. App. Nov. 23, 2011) *cert. denied*, 133 S.Ct. 103, 184 L.Ed.2d 47 (U.S. 2012); *Coble v. State*, 330 S.W.3d 253, 277 (Tex. Crim. App. 2010), holding that expert testimony is not admissible when the offering party provides no scientific research or studies to support her idiosyncratic methodology.

The ruling also conflicts with the opinion of the Court of Criminal Appeals in *Leonard v. State*, 385 S.W.3d 570, 582 (Tex. Crim. App. 2012), which holds that TEX.R.EVID. 702 and 703 do not allow inadmissible evidence to support an expert opinion unless it is reasonably relied upon by experts in the particular field, and reasonable reliance does not exist if the evidence would not pass the reliability test of TEX.R.EVID. 702.

(2) The court of appeals has misconstrued a rule of evidence regarding the admissibility requirements of expert testimony. TEX.R.EVID. 702.

(3) The court of appeals had decided an important question of state law that has not been, but should be, settled by the Court of Criminal Appeals. TEX.R.APP.P. 66.3(b). The question is whether an expert witness, performing tests under the protocols of the DPS lab, may ignore those protocols, rely on data in violation of those protocols, and testify to things expressly prohibited by those protocols when there is no evidence offered to prove the scientific reliability of such deviation.

We will first consider the State's sole ground for review, which is that "The Court of Appeals did not address the preservation of error complained of; therefore, it failed in its obligation to determine whether this systemic requirement of the appeal was met."

**Arguments on State's Ground for Review**

The State argues that the objection at trial was limited to the relevance of the expert's testimony and thus the issue of reliability was not preserved for review. The State complains that the court of appeals did not address its preservation argument. The

State says that Appellant's complaint before the court of appeals and now before this Court asserts a different legal theory than that raised at trial, thus the issue was not preserved.

Appellant argues that her motion in limine included both relevance and reliability. Appellant points out that counsel discussed reliability with the trial judge during the gatekeeper hearing and provided the court with a case related to reliability and relevance. After hearing the evidence, the trial judge ruled that the testimony, including the expert's statement regarding a trace amount of cocaine below the reportable amount, was reliable and relevant. Citing *Moraguez v. State*, 701 S.W.2d 902 (Tex. Crim. App. 1986), Appellant argues that, after the trial court ruled that the testimony would be admitted, no further objection was required to preserve error. Appellant concludes that the testimony was considered and ruled upon by the trial judge and the error was preserved for appellate review.

**Analysis of State's Ground for Review**

Because preservation of error is a systemic requirement on appeal, a court of appeals should review preservation of error regardless of whether the issue was raised by the parties. *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005). Here, the State did raise the issue in its brief to the court of appeals, and the court of appeals failed to address the State's argument that Appellant's error was not preserved. The proper remedy is for us to determine whether the issue Appellant raised on appeal was preserved

for review.

The purpose of requiring an objection is to give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection. Rule of Appellate Procedure 33.1 states that:

> (a) As a prerequisite to presenting a complaint for appellate review, the record must show that:
>> (1) the complaint was made to the trial court by a timely request, objection, or motion that:
>>> (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and
>>> (B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and
>> (2) that the trial court:
>>> (A) ruled on the request, objection, or motion, either expressly or implicitly; or
>>> (B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

The complaining party must let the trial judge know what she wants and why she thinks she is entitled to it, and do so clearly enough for the judge to understand and at a time when the trial court is in a position to do something about it. *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). We are not hyper-technical in examination of whether error was preserved, but the point of error on appeal must comport with the objection made at trial.

The issue Appellant presented to the court of appeals was, "Whether the court erred in allowing the state's expert witness to testify about and rely on the presence of a

trace of cocaine found in the blood sample when the written report failed to include it and she admitted that she was not supposed to even say that it was present under DPS protocols. The state failed to show by clear and convincing evidence that consideration and use of such information was reliable and relevant."

Although Appellant filed a motion in limine objecting to the admissibility of the expert testimony, the issue of the trace amount of cocaine was not addressed because the motion was based on the expert's written report, which does not mention or identify a trace amount of cocaine in Appellant's blood. In the motion in limine, Appellant argued that evidence of metabolite was irrelevant to whether Appellant was intoxicated or impaired when she was operating a motor vehicle and also raised the issue of reliability, stating that:

> The State's expert toxicologist can only "guess" that the presence of the metabolite caused impairment. Other explanations for the Defendant's behavior are just as likely. The expert's guess can not satisfy the three criteria to demonstrate reliability expressed in *Russeau v. State*, 171, S.W.3d 871 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006). An expert's opinion is not reliable if it is not grounded "in the methods and procedures of science" and said opinion is no more than "subjective belief or unsupported speculation." *E.I. duPont de Nemours and Co., Inc. v. Robinson*, 923 S.W.3d 549, 557 (Tex. 1995) [quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S.579, 590 (1993)]. See also *Acevedo v. State*, 255 S.W.3d 162 (Tex. App.–San Antonio 2008, *pet. ref'd*) and *DeLarue v. State*, 102 S.W.3d 388 (Tex. App.–Houston[14th Dist.] 2003, *pet. ref'd*). Merely speculative testimony is unreliable and irrelevant. *Acevedo*, 255 S.W.3d at 169. Before the State can admit evidence that a drug was found in a defendant's blood, the State must show–by reliable and competent scientific evidence–that a defendant was under the influence of that drug at the time of the accident. *DeLarue*, 102 S.W.3d at 400.

Appellant also argued that the testimony was not admissible under Rules of Evidence 702 or 703. Under Rule of Evidence 702, the trial court is responsible for determining whether proffered scientific evidence is sufficiently reliable and relevant to assist the jury.

The trace amount of cocaine was first discussed in the gatekeeper hearing. At the hearing, the State asked the expert witness about her background and experience and about whether the tests she conducted were generally accepted by the scientific community and had been admitted in courts all across the State of Texas and the United States. The expert testified about the results of the GCMS test and stated that she had seen a trace amount of cocaine in Appellant's blood sample but did not list it in her written report because it is DPS policy to not report an amount below .05. The defense asked the witness specific questions about how the GCMS test works and how the results are analyzed. After the testimony, the defense cited *Russeau*, 171 S.W.3d 871, to the trial court and said, "It's the trial court's responsibility to determine whether proper scientific evidence is sufficiently reliable and relevant to assist the jury." The trial court ruled on the motion, stating, "I find that this witness's testimony is reliable and relevant. The defense objection is overruled."

Although no further objection was required,[2] the defense objected based on

---

[2] See *Moraguez v. State*, stating that "[i]t is well settled that when a pre-trial motion to suppress evidence is overruled, the defendant need not subsequently object at trial to the same evidence in order to preserve error on appeal. . . .There can be no question but that appellant originally preserved his error by obtaining an adverse ruling on his motion to suppress, and he was not obligated to again object at trial." 701 S.W.2d at 904 (internal citations omitted).

relevance when the witness testified before the jury and the State asked about the results of her testing. The trial judge overruled the objections.[3]

While Appellant did not specifically complain that the results of the testing or the expert testimony about the trace amount of cocaine were unreliable, Appellant's objection was not limited to relevance. When dealing with this type of evidence, a relevance objection raises the question of whether the testimony is sufficiently reliable and thus relevant to be admitted. As we said in *Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2013), it would be error to distinguish "between admissibility based on relevance and admissibility based on reliability. Under Rule 702 and our precedent, both relevance and reliability of the expert testimony are components of a trial court's *Daubert/Kelly* ruling on admissibility." We additionally stated that the "parsing of appellant's objections is the kind of hyper-technical analysis that we have repeatedly rejected." *Id*.

**Conclusion on State's Ground for Review**

---

[3] STATE: And did your testing also–did you see any trace amounts of cocaine in the blood that were beneath the reportable levels?

DEFENSE: Objection, relevance, Your Honor.

COURT: Overruled.

WITNESS: I did see trace amounts of cocaine, but it was below my reportable limit that I'm allowed to report.

STATE: Explain to the jury what your reportable limit is.

WITNESS: .05 is our lowest calibrator so anything less than half of that I can't even say that I saw cocaine.

While it is true that the court of appeals did not address preservation of error, it is clear from the record that the issue of reliability was raised, discussed, and ruled upon by the trial court. The issue was preserved for review, and the court of appeals did not err in considering the merits of Appellant's argument on appeal.

**Appellant's First Ground for Review**

In her first ground for review, Appellant argues that the court of appeals incorrectly applied the law for admissibility of expert testimony.

Appellant says that the court of appeals's ruling conflicts with our holding in *Layton v. State*, 280 S.W.3d 235 (Tex. Crim. App. 2009), because the party offering expert testimony must prove that the testimony is reliable and relevant by clear and convincing evidence. Appellant says that the State failed to prove by clear and convincing evidence that the expert's testimony regarding the trace of cocaine was reliable and relevant and that the trial court abused its discretion in allowing her to testify about the trace and to rely on it in formulating her opinions. *Layton*, however, is distinguishable from the case before us in that the State in *Layton* failed to present an expert witness to testify regarding what, if any, effect prescription drugs that were taken more than 12 hours before the appellant's arrest might have when combined with alcohol, and thus the State failed to establish that the ingestion of the medications was relevant to intoxication. We stated:

> There is no evidence as to the dosage taken by Appellant, the exact times of ingestion, or the half-life of the drug in the human body. Considering the

> length of time between the ingestion of the medication and the time of arrest, a lay juror is not in a position to determine whether Xanax and Valium, taken more than 12 hours before arrest, would have any effect on Appellant's intoxication.

*Id*. at 241-42. Here, the State did present expert testimony related to the amount of the drug detected in the blood and the half-life of the drug in the human body, from which the expert was able to determine the time of ingestion. The expert here also testified to how the drug was metabolized and the effect the drug would have on the central nervous system. Unlike in *Layton*, the evidence related to the cocaine in Appellant's blood sample was not left to the interpretation of lay jurors.

Appellant next cites *Coble v. State*, 330 S.W.3d 253 (Tex. Crim. App. 2010) and *Gobert v. State*, No. AP-76,345, 2011 Tex. Crim. App. Unpub. LEXIS 891 (Tex. Crim. App. Nov. 23, 2011), arguing that expert testimony is not admissible when the offering party provides no scientific research or studies to support idiosyncratic methodology. In *Coble*, we held that the trial court had abused its discretion in admitting expert testimony related to the future-dangerousness special issue. We determined that the State had not shown the scientific reliability of the evidence by clear and convincing evidence because the expert used his own methodology, did not perform any assessment or rely on any tests, cited no standards relied upon by those in his field, and did not know of any books or articles related to his factors or methodology. *Coble*, 330 S.W.3d at 277. The same psychiatrist testified in *Gobert*, and we again determined that the court erred in admitting his testimony. We stated that the doctor "provided no scientific, psychiatric, or

psychological research or studies to support his idiosyncratic methodology for predicting whether a hypothetical person would commit future acts of violence." 2011 Tex. Crim. App. Unpub. LEXIS 891, at *22. The same is not true here. The expert witness did not rely on idiosyncratic methodology in her analysis of the blood sample. The expert used standard laboratory equipment and scientific techniques relied upon by those in her field to determine the results of the blood test. Her testimony related to the trace amount of cocaine in Appellant's blood was based on the result of the GCMS test, which is generally accepted by the scientific community. Appellant does not dispute the general reliability of the GCMS to analyze blood samples, but argues that by testifying about the trace amount of cocaine detected in Appellant's blood, the expert deviated from DPS laboratory protocols and thus used idiosyncratic methodology. At trial, Appellant asked the expert, "You don't actually see cocaine floating in the blood with some kind of microscope. Right?" She answered, "We do not use microscopes. No, sir." However, Appellant still seems to be arguing that the expert was saying that she actually "saw" or "visualized" cocaine in the blood sample, rather than that the GCMS test detected an amount below the reportable cutoff used by the DPS laboratory. Appellant argued in his brief to the court of appeals that the expert was testifying to her visual observation: "Here the underlying data was the visual observation claimed by the witness to having seen a substance that could not be reported by the scientific instrument in the report and that she was prohibited by DPS protocols from even saying she had seen." He also states that, "It

was only in reliance on the presence of something she claims she saw, but could not be reported by the advanced instrument used in testing, that she then bootstrapped her way into forming an opinion that there was cocaine in the defendant's body at the time of the collision." This is not an accurate understanding of the expert's testimony. The expert was not relying on her own methods of testing or interpretation–she based her opinion on the results of a scientifically accepted test that detected even a trace so small that it was below the minimum required by DPS protocol to be reported as positive. The expert testifying to an amount that is too small to be included in the report does not equate to using her own methods of testing or interpretation. The method of testing was the GCMS and the method of interpreting the results were the same as they would have been if the amount of cocaine detected by the GCMS had been larger, i.e. her training and experience in chemistry and her knowledge of the half-life of the drug and how it is metabolized.

Appellant's argument that the court of appeals's ruling conflicts with our holding in *Leonard v. State*, 385 S.W.3d 570 (Tex. Crim. App. 2012), is also without merit. In *Leonard*, we concluded that the expert's testimony was inadmissible because the sole basis for his opinion was the results of a polygraph test, which have repeatedly been determined to be unreliable and inadmissible. Here, as stated above, the expert based her opinion on the generally reliable and admissible results of the GCMS test.

Appellant's first ground for review is overruled.

**Appellant's Second Ground for Review**

Appellant argues that the court of appeals misconstrued Rule of Evidence 702. Rule 702 states that, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Prior to admitting expert testimony, Rule of Evidence 705(c) requires the trial court to first determine whether the basis for the expert's testimony is reliable, and "[i]f the court determines that the underlying facts or data do not provide a sufficient basis for the expert's opinion under Rule 702 or 703, the opinion is inadmissible." *Id*. The reliability of scientific evidence is analyzed using the three factors enumerated in *Kelly*: (a) the underlying scientific theory must be valid (b) the technique applying the theory must be valid and (c) the technique must have been properly applied. 824 S.W.2d at 573. The admissibility of expert testimony may also be challenged based on the expert's qualifications, or if the testimony does not meet the relevance requirements of Rule 401.[4] As we stated in *Everitt*, "Reliability refers to the scientific basis for the expert testimony, while relevance refers to the 'fit' of the scientific principles to the evidence at hand." 407 S.W.3d at 263. Thus, the question of reliability here relates to whether there was sufficient scientific basis for the expert to testify about an amount of cocaine below the DPS reportable cutoff, and the question of relevance

---

[4]Rule of Evidence 401 states that, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

relates to whether the expert's testimony would assist the jury in understanding the evidence and in making a factual determination.

Appellant argues that the expert's testimony was inherently unreliable and thus irrelevant. She says that, under the third *Kelly* factor, the technique applying the scientific theory was not properly applied because DPS procedure specifies that laboratory reports are not to include positive results that are below a threshold level. She says that the trace of cocaine was inadmissible because reporting it was a deviation from DPS laboratory protocols and, because the trace of cocaine is inadmissible and was the sole basis for the expert's opinion, the expert's testimony is inadmissible.

We agree with Appellant that *Somers v. State*, 368 S.W.3d 528 (Tex. Crim. App. 2012), is not on point and should not be relied upon in this case. In *Somers*, we considered the admissibility of a positive EMIT test when the GCMS results showed only a trace of cocaine. We stated, "Significantly, the record shows that the GC/MS test did in fact show traces of cocaine in Briggs's blood even after this passage of time, but at a level below the minimum required by DPS protocol to be reported as positive. This evidence suggests that the negative GC/MS test in this case does not reflect upon the scientific accuracy of the EMIT test." *Id*. at 544. Although we were not dealing with the reliability of GCMS results that are below the DPS reportable cutoff, *Somers* implies that even if a GCMS test for cocaine is reported as negative, the test may still have detected trace amounts of cocaine in the blood.

The GCMS used in this case was a validated and calibrated instrument, the test was performed by a trained expert, and the results of GCMS tests are widely accepted in the scientific community. These results formed the scientific basis for the expert's testimony and they are sufficiently reliable. The expert testimony presented in this case also meets the relevance requirements in that the testimony assisted the factfinder in understanding the evidence and in determining whether Appellant had cocaine in her system at the time of the collision.

Appellant's second ground for review is overruled.

**Appellant's Third Ground for Review**

In her final ground for review, Appellant asks whether an expert witness who performed tests under the protocols of the DPS lab can ignore those protocols, rely on data in violation of those protocols, and testify to things prohibited by those protocols when there is no evidence offered to prove the scientific reliability of deviating from the protocols. First, we note that the expert followed DPS-laboratory testing protocols and followed the reporting protocols in her written report. If there is a DPS policy prohibiting an expert from testifying at trial to something that was outside the scope of the written report, such policy was never raised or addressed. Even the DPS policy for reportable cutoffs that was mentioned by the expert witness was not questioned by either party in the gatekeeper hearing or at trial and was not cited or discussed in the briefs to the court of appeals or this court. Thus, any issues related to the actual DPS policy were not raised.

Although rate of error is one of the factors that a trial court can consider in determining reliability under *Kelly*, Appellant never stated that the test results showing a trace amount of cocaine could be due to a margin of error. Appellant also did not question the DPS policy or the reasoning behind having a reportable cutoff level for trace evidence. No evidence or arguments were presented at any point in this case about why the DPS laboratory has the internal policy of .05 cutoff for reporting or if such a policy is used in other agencies.

The court of appeals was correct that the technique applying the scientific theory was related to the GCMS results, which were determined to be reliable and relevant. DPS policy or reporting protocol is not the technique applying scientific theory. The court of appeals was also correct that the issue raised by Appellant was related to the reliability of the tests conducted, the methodology used, and the underlying data. The issue is not the reliability of the DPS laboratory protocol or standards–it is the reliability of the GCMS. Finally, the court of appeals was correct that, despite Appellant's argument regarding visual observation of the trace amount of cocaine, the expert's testimony was based on her analysis of the GCMS results.

Here, the expert witness performed the GCMS tests under the protocols of the DPS laboratory. There is no evidence that she ignored or deviated from the testing or reporting protocols or relied on data in violation of those protocols. While she did testify to information that was outside the scope of the written report, there was no evidence

offered that such testimony violated DPS policy. It was also not shown that the expert testifying to something that was outside the scope of the written report rendered the results of the GCMS scientifically unreliable.

## CONCLUSION

The issue of the reliability of the expert's testimony was preserved for review and the court of appeals did not err in reaching the merits of Appellant's argument. The court of appeals properly applied the Rules of Evidence and the law regarding the admissibility of expert testimony. We agree with the court of appeals that the trial court did not err in admitting the expert's testimony, and we affirm the decision of the court of appeals.


Delivered: September 17, 2014

Publish