

# NUMBER 13-23-00316-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOSHUA CLAYTON KAHANEK,                                        **Appellant,**

**v.**

THE STATE OF TEXAS,                                               **Appellee.**

## ON APPEAL FROM THE 377TH DISTRICT COURT
## OF VICTORIA COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva**
**Memorandum Opinion by Justice Silva**

Appellant Joshua Clayton Kahanek was charged with sexually abusing four

children, Sadie, Aria, Callie, and Rachel, over the course of three years.[1] Following a jury trial, the jury returned a guilty verdict on one count of continuous sexual abuse of a young child, a first-degree felony, *see* TEX. PENAL CODE ANN. § 21.02, and assessed punishment at thirty years' imprisonment. *See id.* § 12.32.

By twenty-one issues, which we renumber and consolidate, appellant argues the trial court abused its discretion by (1) admitting evidence of extraneous offenses committed outside Victoria County; (2) failing to sua sponte give jurors a mid-trial limiting instruction; and (3) failing to provide a jury charge that "limited the jury's consideration of the extraneous offenses to the limited purpose for which they were admitted." We affirm.

## I.     BACKGROUND

At various points, Sadie, Aria, Callie, and Rachel resided with their respective families on twelve acres of land (Mercy River Lane), located in Victoria, Texas. Ten homes were built on the land, and in addition to living mere feet away from one another, their families would often vacation together. We summarize their relevant testimony below.

### A.     Witness Testimony

#### 1.     Sadie

Sadie testified that she first spoke out about being inappropriately touched by appellant following her return from Pagosa Springs, Colorado in early 2019. Sadie, eighteen years old at the time of trial, testified that in response to hearing that appellant

---

[1] To preserve the complainants' privacy, we identify them and related individuals by pseudonyms. *See* TEX. R. APP. P. 9.8; *Salazar v. State*, 562 S.W.3d 61, 63 n.1 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.) (noting that the comment to Texas Rules of Appellate Procedure 9.8 does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances).

had digitally penetrated her, Sadie's mother did nothing.[2] Sadie further testified that it had not been an isolated incident of sexual abuse by appellant. Appellant's trial counsel objected to Sadie testifying to "other locations" the incidents took place and the following colloquy occurred:

| | |
|---|---|
| [APPELLANT]: | It's my position that we're getting into extraneous offenses, Judge. I would object to this. We need to have a hearing outside the presence of the jury especially in regards to what's happened in Pagosa [Springs, Colorado]. |
| [STATE]: | It would be contextual, Judge. We can have a proffer outside the presence [of the jury], if [defense counsel] wants to . . . . |
| . . . . | |
| THE COURT: | Can I just give you a running objection to it? |
| [APPELLANT]: | You can give me a running objection and running ruling[,] I guess. |
| THE COURT: | So it's overruled. |

Sadie testified that from her sixth-grade year through junior year of high school, she lived with her mother and siblings on Mercy River Lane and spent many nights at her adult cousin Hailey's house, which was also on Mercy River Lane. Appellant was dating Hailey and would often spend the night at Hailey's home, opting to share a bed with Sadie instead of Hailey. Sadie explained that all the families living on Mercy River Lane were required to abide by a rule: unwed couples could not share a bed and had to be chaperoned. It was minor children, like Sadie, who were often delegated as chaperones.

---

[2] Sadie's mother testified at trial. She recalled her daughter telling her that appellant had touched her inappropriately. When asked what she did in response to the information, she testified, "I failed my daughter. . . . I didn't do anything. . . . I didn't want to believe what she was saying was true." Sadie's mother never reported Sadie's allegations to law enforcement.

3

Sadie testified to several instances of being awoken by appellant's touch. His hand would be on her vagina, either over or under her underwear. Other times, she "would wake up with [her] bra unstrapped," not knowing what had transpired. Sadie testified to similar incidents occurring at appellant's home in Yorktown, Texas.

Sadie said she was reluctant to speak out for several years because, after her parents' divorce, she had grown to see appellant as a father figure and was scared the disclosure would "affect [her] family."

### 2.    Aria

Nearly one year later in March of 2020, Aria immediately outcried to her parents that appellant had touched her inappropriately at their home in Farwell, Texas. Aria, fourteen years old at trial, testified that appellant and Hailey had been in town visiting. Aria and appellant were lying in bed in Aria's brother's bedroom watching her brother play a video game while Hailey was in another room with Aria's sister, Callie. With Aria's brother preoccupied with the video game, appellant began touching Aria's genitals underneath her clothes, using a blanket to hide his movements. Aria abruptly got up and hurried out of the room. Aria's mother testified that Aria ran into her bedroom crying and appeared "scared for her life." Aria's parents confronted appellant, who denied the allegations. According to Aria's father, appellant stated that he had been "very tired" and "that it was just an accident that his hand fell into [Aria's] crotch area." Aria's mother testified that appellant told her "it was an accident," and he mistakenly "thought it was [Hailey]" whom he had touched. Aria's parents believed appellant, and Aria testified that as a result, she did not tell her parents what appellant had done to her in years past at

4

Hailey's home on Mercy River Lane, at appellant's home in Yorktown, Texas, nor during the family trip to Pagosa Springs, Colorado. In each instance, Aria testified to digital penetration.

### 3. Callie

Eight months later, on December 31, 2020, Callie told her parents that appellant had inappropriately touched her for years. Callie, thirteen years old at the time of trial, testified that she, along with her sister, Aria, often spent the night at Hailey's home on Mercy River Lane from the ages of "five or six" to eight years old. Callie testified that appellant touched her vagina beneath her underwear, and it happened "every time" she slept over. Callie testified to instances of digital penetration also occurring during the family trip to Pagosa Springs, Colorado, and when appellant would visit her home in Farwell, Texas.

### 4. Rachel

Rachel, twelve years old at trial, testified that she was between the ages of seven and nine when appellant began touching her over and underneath her clothing, digitally penetrating her vagina. Rachel said that it happened when she would sleep over at Hailey's house and when the family had traveled to Wimberley, Texas, for vacation. Rachel did not testify to acts of penile to vaginal penetration.

### 5. Anna

In early February 2022, Anna was interviewed as part of the investigation. Anna, sixteen years old at trial, testified that she had only ever confided in Sadie, her cousin, about what had happened with appellant, so she presumed Sadie told an adult. Anna

said appellant touched her once—on the first night of a family trip to Pagosa Springs, Colorado, when she was "eleven or 12" years old. Appellant began touching her vaginal area as she was starting to doze off to sleep, first over the clothes and then under. Anna testified that she refused to share a bed with him for the remainder of the trip.

### 6. Aria and Callie's Parents

A text message exchange between Aria and Callie's mother and appellant was admitted into evidence, wherein their mother confronted appellant after he showed up unannounced at their home a few months after Aria's March 2020 outcry. Appellant apologized and alluded that Hailey did not know about the allegations. Aria and Callie's parents testified that, in response to Callie's allegations in December 2020, they no longer allowed appellant into their home and stopped visiting Mercy River Lane, but they declined to contact law enforcement. A text message exchange between Hailey and Aria and Callie's mother, dated April 16, 2021, was also admitted at trial, wherein Hailey asked Aria and Callie's mother if she had "blocked" her on social media because she had chosen to remain in a relationship with appellant. Their mother responded, "Yes[,] I did. My daughters, [sic] mean more to me than seeing a happy anniversary post [of you and appellant]. I'm hurt by the situation, and I could only imagine how my girls feel if I'm this hurt. I'm trying my best not to explode and just go off. But for my peace and for me standing up for my kids[,] I did that."

### 7. Hailey

Hailey testified that she could not recall whether the girls ever spent the night at her home, but she later conceded that it was "possible" that her nieces shared a bed with

6

appellant if they did. When asked about why it had been acceptable for her nieces to share a bed with appellant but not her, she replied: "I did not think there was anything uncomfortable, anything awkward because it wasn't anything malicious. If there had been any reason to have any doubt or belief in that it would have never happened."

### 8. Investigator Angela Martinez

Victoria County's Sheriff's Office Investigator Angela Martinez confirmed that law enforcement did not become involved until August 2021—after Sadie's therapist [3] reported her outcry. Sadie participated in a forensic interview on August 17, 2021, and she made statements which led Investigator Martinez to believe there were other victims. Aria and Callie were subsequently interviewed on November 22, 2021.

One day before, on November 21, 2021, Rachel's elementary school counselor contacted child protective services after one of Rachel's teachers discovered a concerning entry in Rachel's journal. The journal entry was admitted into evidence at trial:

> My uncle just f[-]cking raped me like he was f[-]cking touching me. So I had to stay at his house[,] and my aunt was working[,] and I went [intelligible] so I was tired and so I took a bath and when I got out he said, "Hey are you going to sleep in the bed or on the couch[,]" and I chose to sleep in the bed bc [sic] the couch is uncomfortable[,] and I crawled in the bed and was going to sleep[,] and I felt something go in my pants[,] and he put his hand on my panties and pushed them off and took off my shorts and [sic] didn't [k]now what to do. He f[-]cking pulled out his d[-]ck and f[-]cking raped [intelligible] on my knees and [intelligible].[4] . . . I was so scared! Girls are not toys.

---

[3] Sadie's therapist testified at trial, and his records were admitted into evidence, wherein he indicated that Sadie was "feeling depressed and anxious about the incident that occurred over the summer." Sadie further relayed to her therapist "that other people had told her that [appellant] had done the same thing to them" but "didn't provide any names or relations of the other victims." Her therapist did not disclose the details of the abuse.

[4] During cross-examination, portions of Rachel's journal were read into the record, and Rachel confirmed one line read: "he pulled out his d[-]ck and rammed it in my p[-]ssy."

According to Investigator Martinez, appellant provided a statement to law enforcement confirming he frequently stayed at Hailey's home on Mercy River Lane; he had not been "allowed" to sleep in the same bed as Hailey; and it was not unusual for him to share a bed with one of the younger children, who acted as "chaperones." Appellant denied sexually assaulting any of the girls. The jury returned a guilty verdict on one count of continuous sexual abuse and sentenced appellant as described above. This appeal ensued.

## II. EXTRANEOUS OFFENSE

Appellant argues by his first issue that the trial court abused its discretion in admitting evidence concerning extraneous offenses involving appellant and the girls occurring outside of Victoria County. *See* TEX. R. EVID. 403, 404. Embedded in appellant's first issue is a challenge to the admissibility of extraneous offense testimony on the grounds that the State's pre-trial notice of extraneous offenses, provided one week before trial, was untimely pursuant to Article 38.37 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37.

Significant here, five of the alleged "extraneous offenses" occurred in Texas. The State argues that "[o]nly the Colorado incidents could have been 'extraneous offenses' given the charged offense." For reasons expounded on below, we agree with the State, and address the in-state, out-of-county offenses first.

## A. Standard of Review

We review a decision to admit or exclude evidence for an abuse of discretion. *Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022). When extraneous offense

8

or extraneous bad act evidence is erroneously admitted, it is non-constitutional error which is reversible only if it affected the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *see Lopez v. State*, 288 S.W.3d 148, 173 (Tex. App.—Corpus Christi–Edinburg 2009, pet. ref'd); *see also Alvarado v. State*, No. 13-22-00481-CR, 2024 WL 1567194, at *8 (Tex. App.—Corpus Christi–Edinburg Apr. 11, 2024, no pet.) (mem. op., not designated for publication).

## B.     In-State, Out-of-County Sexual Acts

A person commits the offense of continuous sexual abuse of a child if:

(1)     during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2)     at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is:

(A)     a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense . . . .

TEX. PENAL CODE ANN. § 21.02(b). The continuous sexual abuse of a young child statute requires proof of two or more predicate acts of sexual abuse that are in "violation of Texas law." *Lee v. State*, 537 S.W.3d 924, 926 (Tex. Crim. App. 2017); *see* TEX. PENAL CODE ANN. § 21.02(b). The statute does not, however, require all elements of the offense to be committed in one county. *Hinojosa v. State*, 555 S.W.3d 262, 267 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd); *Meraz v. State*, 415 S.W.3d 502, 505 (Tex. App.—San Antonio 2013, pet. ref'd); *see* TEX. PENAL CODE ANN. § 21.02(b). Accordingly, while an in-state, out-of-county sexual act can be considered a predicate act necessary for a conviction under § 21.02, an out-of-state sexual act cannot. *Lee*, 537 S.W.3d at 926; *Hinojosa*, 555

S.W.3d at 267; *Meraz*, 415 S.W.3d at 505; *see also Nightingale v. State*, No. 13-22-00334-CR, 2023 WL 3243414, at *4 n.4 (Tex. App.—Corpus Christi–Edinburg May 4, 2023, pet. ref'd) (mem. op., not designated for publication) ("In fact, as appellant notes in his brief, the Texas Court of Criminal Appeals has held that an out-of-state offense cannot support a conviction for continuous sexual abuse of a child."); *King v. State*, No. 10-19-00280-CR, 2021 WL 1567797, at *3 (Tex. App.—Waco Apr. 21, 2021, pet. ref'd) (mem. op., not designated for publication) (observing the same).

Under the indictment in this case, the jury could have considered appellant's sexual acts in Yorktown, Wimberley, and Farwell to be predicate acts of sexual abuse that would support a continuous sexual abuse of a child conviction.[5] *See Hinojosa*, 555 S.W.3d at 267; *Meraz*, 415 S.W.3d at 505. It follows that these acts were not extraneous offenses. *Cf. Chumacero v. State*, 676 S.W.3d 878, 887 (Tex. App.—Corpus Christi–Edinburg 2023, pet. ref'd) ("A trial court has no discretion in determining what the law is or applying the law to the facts." (cleaned up)); *see also King*, 2021 WL 1567797, at *3 ("Because there is no prohibition to the jury's consideration of specific acts of sexual abuse occurring in different counties in order to convict a defendant for continuous sexual abuse of a young child, the specific acts of sexual abuse which may have occurred in

---

[5] Given appellant raised no timely objection to the indictment, this is true irrespective of whether the in-state, out-of-county acts were pleaded in the indictment because "the indictment as a whole, was sufficient to vest the district court with subject-matter jurisdiction and give the defendant notice that the State intended to prosecute him for a felony offense." *Jenkins v. State*, 592 S.W.3d 894, 899 (Tex. Crim. App. 2018) (citing *Teal v. State*, 230 S.W.3d 172, 182 (Tex. Crim. App. 2007)); *see* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) ("If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding.").

Falls County are not extraneous offenses."). The trial court therefore did not abuse its discretion in admitting evidence of acts of sexual abuse which took place in Texas but outside of Victoria County.

We overrule this sub-issue and consider appellant's remaining arguments under Article 38.37, Rule 404(b), and Rule 403 as they pertain to the offenses alleged to have occurred in Pagosa Springs, Colorado.

## C. Article 38.37

Article 38.37, entitled "Evidence of extraneous offenses or acts," is an evidentiary rule applicable to certain types of sexual abuse cases, including continuous sexual abuse of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37; *see also Recinos v. State*, No. 13-23-00554-CR, 2024 WL 3982735, at *6 (Tex. App.—Corpus Christi–Edinburg Aug. 29, 2024, no pet.) (mem. op., not designated for publication). "It supersedes application of Rule 404(b), making admissible extraneous offense evidence that Rule 404(b) does not." *Lara v. State*, 513 S.W.3d 135, 141 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing TEX. CODE CRIM. PROC. ANN. art. 38.37 §§ 1(b), 2(b)). Under Article 38.37, the State must give a defendant notice of its intention to introduce evidence of other offenses the defendant committed at least thirty days before trial. TEX. CODE CRIM. PROC. ANN. art. 38.37 §§ 2(b), 3.

Appellant posits, "[T]he State *never* argued the extraneous offenses were admissible under Art[icle] 38.37—a tacit admission its notices were deficient—and a silence that speaks volumes about why the trial court's ruling admitting them constituted an abuse of discretion." However, it was not just the State that was silent regarding Article

38.37 applicability at trial. Appellant does not point to, nor have we found, any indication in the record that appellant challenged the State's notice as untimely under Article 38.37. Rather, appellant's arguments regarding untimely notice were made squarely under Article 38.072, which concerns the admission of hearsay statements of certain abuse victims predicated, in relevant part, on whether the State provides a defendant notice of the statements "on or before the 14th day before the date the proceeding begins." *See id.* art. 38.072 § 2(b)(1). Appellant's argument at trial was as follows:

[Appellant]: Judge, I need to call a couple of witnesses myself if I could; [Article] 38.072 provides for a complete hearing outside the presence of the jury. If we're dealing with hearsay here, an out of court statement offered to be—to prove the truth of the matter asserted there is an exception. Whenever we look at the [c]ode and the law, and what the law actually says is that it has to be the first person over the age of 18.

Now, she testified that she didn't know but I believe the evidence we already have before the Court from the first witness today was that there was a conversation about what happened and it was admitted to . . . somebody that was over the age of 18 years old. I would like to recall her and I would like to call [Anna] to establish who the first person over the age of 18 was that she told because [Article] 38.072 only permits that hearsay except to the first person over the age of 18 that I'm given notice of.

. . . .

First[,] I would like to recall [Anna's mother]. I anticipate, hopefully, her testimony remains constant and she says that she got this information and she talked to her daughter about what happened and her daughter said yes, it happened and this happened before the counseling according to her testimony. I anticipate calling [Anna] and asking her the same question—who is the first person you told about this? Now, what I've been given notice of, as required by [Article] 38.072, is not penetration at all. It's just a simple touching so the penetration part is not even admissible as far as I'm

12

concerned because [Article] 38.072 specifically requires notice of that outcry so it's just going to be a touching but it's got to be to the first person over the age of 18 and it doesn't even have to be even descriptive.

To preserve a complaint for appellate review, the complaining party must make a timely objection to the trial court that states the grounds with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds are apparent from the context. TEX. R. APP. P. 33.1(a)(1). "The complaining party must let the trial judge know what he wants and why he thinks he is entitled to it and do so clearly enough for the judge to understand and at a time when the trial court is in a position to do something about it." *Singleton v. State*, 631 S.W.3d 213, 217–18 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (citing *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014); *Harris v. State*, 475 S.W.3d 395, 400 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd)). Although we do not analyze preservation of error in a hyper-technical manner, the error on appeal must comport with the objection made at trial. *Bekendam*, 441 S.W.3d at 300; *Harris*, 475 S.W.3d at 400.

Here, appellant did not object to the State's purported failure to provide timely notice under Article 38.37 at trial and therefore did not preserve error. *See Singleton*, 631 S.W.3d 217–18 (concluding appellant's complaint that the State failed to give notice under Article 38.37 was forfeited because he did not object in the trial court); *see also Graf v. State*, No. 02-23-00130-CR, 2024 WL 3059556, at *11 (Tex. App.—Fort Worth June 20, 2024, no pet.) (mem. op., not designated for publication) (same); *Cathcart v. State*, No. 05-15-01176-CR, 2017 WL 34588, at *5 (Tex. App.—Dallas Jan. 4, 2017, pet. ref'd) (mem. op., not designated for publication) (same).

13

Even if appellant had preserved this argument for review and we found error, the error would not be reversible. The purpose of Article 38.37's notice provision is to prevent surprise and allow the defendant sufficient time to prepare for the State's introduction of extraneous-offense evidence at trial. *See Villarreal v. State*, 470 S.W.3d 168, 176 (Tex. App.—Austin 2015, no pet.). Evidence of acts occurring out-of-state was made available to appellant several weeks prior to the State's pre-trial notice filing. Thus, even if the State's formal notice was untimely, the error in admitting the testimony would not have affected appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Pena v. State*, 554 S.W.3d 242, 248–49 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) ("In considering whether the trial court's error in admitting extraneous offense evidence based on the State's failure to provide adequate notice was harmful, we bear in mind the purpose of the notice provisions of [A]rticle 38.37 and [R]ule 404(b), which is to avoid surprise and to allow the defendant to mount an effective defense."). We overrule this sub-issue.

**D. Rule 404(b)**

We turn to appellant's challenge to the admissibility of the Pagosa Springs, Colorado extraneous offense evidence under Rule 404(b).[6]

---

[6] Appellant tangentially argues that the State is judicially estopped from arguing the trial court could have admitted the evidence under "any of the other Rule 404(b) exceptions" because at trial, the State asserted admissibility was proper as "contextual" evidence. However, appellant's arguments are unavailing given our standard of review dictates that we may uphold a trial court's ruling on the admission of evidence if the ruling is proper under any legal theory or basis applicable to the case. *See Najar v. State*, 618 S.W.3d 366, 373 (Tex. Crim. App. 2021); *see also Bohanna v. State*, No. 14-19-00936-CR, 2021 WL 1917663, at *7 (Tex. App.—Houston [14th Dist.] May 13, 2021, pet. ref'd) (mem. op., not designated for publication) ("Because we will uphold a trial court's ruling on the admission or exclusion of evidence if the ruling was proper under any legal theory or basis applicable to the case, we are not limited to considering only the cases cited by the State in the trial court.").

14

"Evidence of a crime, wrong, or act other than the offense charged is not admissible to prove that the defendant acted in conformity with his character but may be admissible for other purposes." *Inthalangsy v. State*, 634 S.W.3d 749, 756 (Tex. Crim. App. 2021) (citing TEX. R. EVID. 404(b)). These purposes include proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). The listed purposes "are neither mutually exclusive nor collectively exhaustive." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *see also Caballero v. State*, No. 13-22-00183-CR, 2024 WL 484698, at *14 (Tex. App.—Corpus Christi–Edinburg Feb. 8, 2024, no pet.) (mem. op., not designated for publication). "One well-established rationale for admitting evidence of uncharged misconduct is to rebut a defensive issue that negates one of the elements of the offense." *De La Paz*, 279 S.W.3d at 343. In sexual-assault cases, extraneous-offense evidence may be admitted under Rule 404(b) to rebut defensive theories of retaliation or fabrication. *See Wheeler v. State*, 67 S.W.3d 879, 887 n. 22 (Tex. Crim. App. 2002) (admitting extraneous-offense evidence to rebut defensive theory of a "frame-up"); *Webb v. State*, 575 S.W.3d 905, 909 (Tex. App.—Waco 2019, pet. ref'd) (permitting evidence of extraneous sexual assault offense to rebut a fabrication defense in indecency with a child case); *see also Garza v. State*, No. 03-22-00073-CR, 2023 WL 4277362, at *7 (Tex. App.—Austin June 30, 2023, pet. ref'd) (mem. op., not designated for publication) (permitting evidence of extraneous sexual assault offense to rebut a fabrication defense in sexual assault case).

"To be admissible for rebuttal of a fabrication defense, 'the extraneous misconduct must be at least similar to the charged one.'" *Webb*, 575 S.W.3d at 908 (quoting *Newton*

15

*v. State*, 301 S.W.3d 315, 317 (Tex. App.—Waco 2009, pet. ref'd)); *see Wheeler*, 67 S.W.3d at 888 n.22. The requisite degree of similarity is not that of exact sameness. *Webb*, 575 S.W.3d at 908; *see Newton*, 301 S.W.3d at 318 ("Although some similarity is required, the requisite degree of similarity is not as exacting as necessary when extraneous-offense evidence is offered to prove identity by showing the defendant's 'system' or *modus operandi*."); *see also Day v. State*, No. 13-14-00040-CR, 2015 WL 4504692, at *4 (Tex. App.—Corpus Christi–Edinburg July 23, 2015, pet. ref'd) (mem. op., not designated for publication) (observing the same). Moreover, "[a] defensive theory may be raised through voir dire, opening statements, or cross-examination." *Donald v. State*, 543 S.W.3d 466, 482 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (collecting cases).

Here, appellant's defensive theory was clear in both voir dire and his opening statement. First, during voir dire, appellant's trial counsel repeatedly asked prospective jurors about whether children lie and invited prospective jurors to give examples as to why children may lie. Then, during opening statements, counsel stated in relevant part:

> You're going to hear from probably five young girls. . . . [The State] spoke about watching for the consistency. I'm going to ask you to watch for the consistency. I'm going to ask you to watch for the details because the depth of a fabricated story is in the details. I anticipate that the evidence is going to show these young ladies made allegations but before they made allegations they basically had, I don't want to call it a party, but a group meeting and discussed it.
>
> . . . . [L]aw enforcement gets involved and starts asking questions, doing investigations, getting stories, and stories that the evidence is going to show change with time. They get worse and worse. The stories kept changing until this past week. Until Friday the stories kept developing and changing. The evidence is going to show there's no credibility there. And you get to assess the credibility of the witnesses. Look at the consistency.

16

The evidence is going to show—[the State] said he believed the evidence is going to show one big happy family. I think the evidence is going to show something far from this. This was a circus. This was brothers and sisters that were mad at each other, angry at each other. They teamed up against each other. They had problems with each other. They drug each other down. It wasn't a happy family. The evidence is going to show that there was some serious allegations.

The evidence is going to show there's no credibility whatsoever to those allegations.

During cross-examination of the State's first witness, Anna's mother, the defense questioned her on the accuracy of her recollection, on the existence of discord among family members, and whether the family had communicated internally regarding the allegations before involving police—alluding to the defense's theory that the girls had conspired to fabricate the allegations.

Considering the foregoing, we conclude that appellant opened the door to the admission of the Pagosa Springs, Colorado extraneous-offense evidence to rebut the defensive theory of fabrication. *See Donald*, 543 S.W.3d at 482; *see also Day*, 2015 WL 4504692, at *4 (concluding appellant raised a fabrication defense during his opening by asserting the complainant had "told another lie").

We further conclude that the alleged extraneous offenses are sufficiently similar to the charged offenses; in both, appellant digitally penetrated his nieces while they tried to sleep in a shared bed. *See Webb*, 575 S.W.3d at 910 (concluding that an extraneous offense was sufficiently similar to the charged offense where "Webb entered the lives of each of the victims by being in a relationship with a family member" and engaged in similar acts, including "rub[bing] on their bodies and touch[ing] their breasts and private areas"); *Newton*, 301 S.W.3d at 317–18 (concluding same where the victims were the defendant's

17

step-daughters, both were about ten years old when the sexual assaults occurred, and the sexual assaults occurred for several years); *Dennis v. State*, 178 S.W.3d 172, 179 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (concluding the same where both "offenses involved teenage girls whom Dennis knew; both occurred in Dennis's apartment, on a couch, in the living room area; both occurred in the summer of 2001; and, during both instances, Dennis did not say much to the victim as he sexually assaulted her"). Thus, the trial court did not abuse its discretion in admitting evidence of the Pagosa Springs, Colorado extraneous offenses under Rule 404(b). *See Perkins*, 664 S.W.3d at 217. We overrule this sub-issue.

**E.    Rule 403**

Although appellant also challenges the inclusion of extraneous offense evidence pursuant to Rule 403, the record reflects that at trial, appellant broadly objected to its admission under Rule 404(b)—not Rule 403. *Cf.* TEX. R. APP. P. 33.1(a)(1) (preservation requirements). Consequently, appellant's Rule 403 argument has not been preserved for review. *See id.*; *Bekendam*, 441 S.W.3d at 300; *Harris*, 475 S.W.3d at 400; *see also Coquat v. State*, No. 13-21-00266-CR, 2022 WL 3724112, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 30, 2022, no pet.) (mem. op., not designated for publication) (concluding appellant waived his Rule 403 argument on appeal where he only objected under Rule 404(b) and Article 38.37 at trial). We overrule issue one in its entirety.

### III.    LIMITING INSTRUCTION

Appellant, by his second issue, argues the trial court erred in failing to provide a mid-trial limiting instruction upon admission of extraneous offense evidence.

18

Upon request, the trial court must give a limiting instruction to the jury at the time that extraneous offense evidence is offered. *See* TEX. R. EVID. 105(a); *Pugh v. State*, 639 S.W.3d 72, 97 (Tex. Crim. App. 2022); *Fears v. State*, 479 S.W.3d 315, 331–32 (Tex. App.—Corpus Christi–Edinburg 2015, pet. ref'd). "[B]y rule, the responsibility for requesting such an instruction falls to the parties." *Pugh*, 639 S.W.3d at 97. A trial court will not err in failing to give a limiting instruction where it is not requested at the first opportunity. *Fears*, 479 S.W.3d at 332; *see* TEX. R. APP. P. 33.1(a)(1). Moreover, an appellant waives complaint on appeal absent a timely limiting instruction request. *Martinez v. State*, 527 S.W.3d 310, 326 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd); *see also Gonzalez v. State*, No. 03-22-00287-CR, 2023 WL 7093815, at *20 (Tex. App.—Austin Oct. 27, 2023, no pet.) (mem. op., not designated for publication) (concluding trial court did not err in failing to provide the jury with a limiting instruction at the time extraneous-offense evidence was admitted because appellant did not request a limiting instruction, and appellant's inaction likewise waived error on appellate review).

Appellant, as the party opposing the evidence, had the burden to request a limiting instruction at the time the trial court admitted the evidence. *See Pugh*, 639 S.W.3d at 97; *Fears*, 479 S.W.3d at 332. Appellant here recognizes the mid-trial instruction was not requested at any point but nonetheless avers the trial court erred in failing to provide one *sua sponte*. Appellant cites no authority supporting his position or otherwise indicating that the usual error preservation rules do not apply. *See* TEX. R. APP. P. 33.1(a)(1). Finding no authority in support of appellant's contention, we conclude appellant's issue has been waived for failure to request a timely limiting instruction. *See Fears*, 479 S.W.3d

at 332; *Martinez*, 527 S.W.3d at 326; *see also Gonzalez*, 2023 WL 7093815, at *20. We overrule appellant's second issue.

## IV.    JURY CHARGE ERROR

By his third issue, appellant argues he was "egregiously harmed by the absence of an instruction in the charge that limited the jury's consideration of the extraneous offenses to the limited purpose for which they were admitted."

However, appellant's argument on appeal for this issue is limited to a reiteration of arguments made concerning the lack of mid-trial limiting instruction and Rule 404(b) challenge, which we have addressed *supra*. To the extent appellant means to challenge the jury charge,[7] we find this issue to be inadequately briefed and waived. *See* Tex. R. App. P. 38.1(i); *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) ("An appellate court has no obligation to construct and compose an appellant's issues, facts, and arguments with appropriate citations to authorities and to the record." (cleaned up)); *Briceno v. State*, 675 S.W.3d 87, 96 (Tex. App.—Waco 2023, no pet.) (finding waiver where appellant "inadequately briefed" an issue); *Alvarez v. State*, No. 13-22-00013-CR, 2022 WL 3654761, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 25, 2022, pet. ref'd) (mem. op., not designated for publication) (same). We overrule appellant's third issue.

---

[7] We additionally observe that no objection to the charge was made at trial, and the jury charge did, in fact, contain the following limiting instruction:

> The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, for the purpose of showing the defendant's motive, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident, if any. You cannot consider the testimony unless you find and believe beyond a reasonable doubt that the defendant committed these acts, if any.

Appellant does not state what limiting instruction language would have been preferred in the alternative.

20

## V. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
7th day of November, 2024.