

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00486-CR

Felix **MARFIL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2023CR10442
Honorable Michael E. Mery, Judge Presiding

Opinion by:    H. Todd McCray, Justice

Sitting:    Lori I. Valenzuela, Justice
Lori Massey Brissette, Justice
H. Todd McCray, Justice

Delivered and Filed: September 24, 2025

AFFIRMED

Felix Marfil appeals his convictions of aggravated sexual assault of a child and indecency with a child by sexual contact. In his sole issue on appeal, Marfil contends that the trial court erred in allowing a police investigator to testify regarding Marfil's credibility. We affirm the judgment of the trial court.

## BACKGROUND

Marfil was convicted of sexually assaulting his ten-year-old granddaughter. The State's case rested on the complainant's account of the abuse, her mother's testimony regarding the complainant's outcry and subsequent behavior changes, a forensic interview, testimony from a pediatric abuse expert who examined the complainant, and a series of text messages sent by Marfil to the complainant's mother. The text messages read as follows (altered as noted for clarity):

> [] I am truly sorry for everything and all the trauma and stress I have caused you and now what I am [] going through is unforgivable, whatever you want I am willing to pay the price. The grief your mother has put me through for what I did to my precious [granddaughter]. Believe me I don't know what else will come from this but I am tired and tired of living. Now your mother doesn't want me to come home so I will be available by phone if you need to talk to me or are you up to talking to me
>
> Should I turn myself in or just [end it]
>
> And NO I never hurt [grandson] in any way you know how much I love him, never intended to hurt [granddaughter], but it's too late to change anything, just want to let you know that I truly love you
>
> I am so sorry for everything I am truly sorry for what your mom is going to put [granddaughter] through as she did with you, [granddaughter] is forgiving caring an[d] very resilient she will get through this
>
> Did you press charges so I can make arrangements at work and turn myself in

While the State used the text messages as evidence of guilt, Marfil offered a different explanation for them. Marfil testified that he sent the texts during a busy workday when his phone battery was running low. He went on to say that, in the texts, he was apologizing for not protecting his own children from his wife when they were young, and he was lamenting how his wife was now manipulating his granddaughter in the same ways. He explained his statements that he was "willing to pay the price" and that he would "turn [him]self in" were his way of saying that he was ready to get it over with and have the truth come out. He explained his statement that he was "tired

of living" and might "end it" meant that he was tired of always being accused of something by his wife. He further claimed that his statement that it was "too late to change anything," meant it was too late to protect anyone from his wife.

Investigator Elizabeth Hernandez testified regarding her interview of Marfil following his arrest. Hernandez testified that she confronted Marfil with the text messages, and he offered his explanations. The following exchange took place between Hernandez and the prosecutor:

> Q: And did you confront the defendant with those text messages during this interview?
>
> A: We did, yes.
>
> STATE: And did he give you an explanation as to the contents of those messages?
>
> Q: I believe he said that he was rushed. He was trying to get his point across so they were very rushed. His phone was gonna die. And he said he was trying to apologize for what the child victim will go through because his wife -- I forgot the verbiage he used but [] that she would torment them.
>
> A: Okay. So he attempted to [] explain the apology by apologizing for somebody else's actions. Is that [] basically what he's saying?
>
> Q: Essentially, yes.
>
> A: Did that make any sense to you during this interview?
>
> Q: The way that some of the texts were written, no.
>
> A: Investigator Hernandez, I am presenting to you [] the text messages sent by the defendant to his daughter. After looking at those text messages and reviewing the contents of those text messages, did the defendant's explanation as to why he would send those messages make sense?
>
> DEFENSE COUNSEL: Judge, let me object at this time. Asking this witness what's in the mind of Mr. Marfil is beyond her expertise, Judge.
>
> Q: Your Honor, the State's asking whether or not the explanation that the defendant is providing makes sense given the contents of the investigation.
>
> THE COURT: I'll let her state her opinion on that. It's overruled.

Q: Given what you know through your investigation, does the defendant's explanation to those text messages make sense in the context of the investigation?

A: No.

Q: And why not?

A: As I'm looking at it, it does say I'm truly sorry for everything, for the trauma and stress I caused. It says I caused. And then also there's another text message that I can recall that said that he was going to turn himself in. So it just—the fact that she may torment or he alleges that she may torment them still doesn't explain those text messages to me.

Q: And by "she" you mean the defendant's wife?

A: Yes.

## DISCUSSION

Marfil contends that the trial court erred in permitting Investigator Hernandez to testify regarding the credibility of Marfil's explanation of the text messages. According to Marfil, Hernandez's testimony amounted to an impermissible comment on his credibility, usurped the role of the jury, and substantially affected the outcome of the trial.

### A. Preservation of Error

The State argues that Marfil failed to preserve error regarding Hernandez's testimony. We agree. In order to preserve a complaint for appellate review, a party must make a timely objection, state the specific grounds for the objection, and obtain a ruling. TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(1); *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014). An objection "must be specific enough so as to let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Resendez v. State*, 306 S.W.2d 308, 313 (Tex. Crim. App. 2009) (quoting *Lankston v. State,* 827 S.W.2d 907, 909 (Tex. Crim. App.1992)).

The legal basis of a complaint raised on appeal cannot vary from that raised at trial. *See Gibson v. State*, 541 S.W.3d 164, 166 (Tex. Crim. App. 2017) (noting the need for the trial objection to comport with the appellate argument); *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014) (stating "the point of error on appeal must comport with the objection made at trial"). While Texas law does not require "magic words" to preserve appeal, the sufficiency of an objection turns on whether the trial court was given a fair opportunity to rule on the specific legal issue. *See Bekendam*, 441 S.W.3d at 300. Where the objection does not clearly reference the legal basis for the complaint and that basis is not apparent from the context, error is not preserved. *Pena v. State*, 285 S.W.3d 459, 463 (Tex. Crim. App. 2009).

Here, Marfil objected that asking Hernandez "what is in the mind of Mr. Marfil is beyond her expertise." This objection speaks in terms of expert qualifications, not the credibility of the defendant. The objection suggests a Rule 702 challenge: that Hernandez lacked the professional training to evaluate another person's mental state. *See* TEX. R. EVID. 702. It does not alert the court that the defense was asserting a Rule 701 or Rule 704 violation regarding an improper lay opinion on truthfulness. *See* TEX. R. EVID. 701, 704. Marfil did not reference credibility, truthfulness, improper opinion or jury function. *See Williams v. State*, 402 S.W.3d 425, 437 (Tex. Crim. App. 2013) ("An objection stating one legal theory may not be used to support a different legal theory on appeal.").

Furthermore, the defense failed to renew the objection or request a limiting instruction after the State's follow-up question. The State's question, "And why not?" elicited further explanation of Hernandez's testimony that Marfil's account of the texts did not make sense. Failure to object to re-offered inadmissible evidence waives the complaint. *Lane v. State*, 151 S.W.3d 188 (Tex. Crim. App. 2004), *Leday v. State*, 983 S.W.2d 713, 719 (1998). Even if we were to consider the

follow-up question close enough in time and topic that Marfil's initial objection encompassed it, it does nothing to rectify the fact that the objection was unclear if it meant to address the admissibility of testimony regarding Marfil's credibility. The question presented a chance for Marfil to clarify or refine the legal basis of his initial objection, but he failed to do. Because the objection focused on the witness's expertise rather than Marfil's credibility and no further clarification or objection was offered, we conclude that the objection was insufficiently specific to preserve a complaint regarding improper opinion testimony on credibility.

## B. Credibility Testimony

Even assuming Marfil's objection had properly preserved the issue, the testimony in dispute does not constitute reversible error. Texas law prohibits a witness or a lay expert from offering an opinion on whether another person is telling the truth as such determinations fall exclusively within the province of the jury. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997); *Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993). However, not all commentary about a defendant's previous statements amount to a credibility opinion.

The substance of the statement at issue here is whether Marfil's explanations made sense. This is not a direct or even an implied assertion that Marfil was lying. Rather, it was a statement about whether his explanation of a specific set of facts was logically coherent from the perspective of the investigator. We have recognized that law enforcement officers may testify about whether information received during an interview made sense or led to further action, so long as the testimony does not directly address the defendant's truthfulness. *See Fisher v. State*, 121 S.W.3d 38, 41 (Tex. App.—San Antonio 2001, pet. ref'd). In Fisher, we found no error where the officer testified that the defendant's story "did not line up" with the physical evidence. *Id.* at 42; *see also James v. State*, 335, S.W.3d 719, 726 (Tex. App.—Fort Worth 2011, no pet.) (finding officer's

testimony that defendant's self-defense claim did not "make sense" based upon his observations was not opinion testimony of truthfulness).

Here, Hernandez's testimony was confined to the plausibility of Marfil's explanation regarding the specific text messages. She did not state that Marfil was untruthful, deceptive, or that she believed the complainant over him. Her remarks were limited in scope, non-prejudicial in tone, and not repeated or emphasized by the prosecution. On this record, we do not find that the statement improperly commented on Marfil's credibility or constituted testimony so prejudicial that it affected his substantial rights.

### C. Harm Analysis

Moreover, even if Hernandez's testimony had constituted an impermissible comment on Appellant's credibility, we would find no reversible error. Under Texas Rule of Appellate Procedure 44.2(b), non-constitutional error must be disregarded unless it affects the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b). A substantial right is affected when the error has a substantial and injurious effect or influence on the jury's verdict. *See Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In analyzing potential harm from a non-constitutional error, we consider the nature and context of the error, whether the error was emphasized by the State, the strength of the State's case, and whether the jury received proper instructions. *See Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003).

These factors were analyzed in *Cook v. State*, where a detective similarly testified that the defendant's story "did not make sense." *Cook v. State*, 199 S.W.3d 495 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The court found the testimony inadmissible but held the error harmless because it was brief and not repeated, it was not mentioned in closing, it was not the only evidence

of guilt, and the jury was properly instructed. The same is true here. Hernandez's testimony was a concise opinion, not elaborated upon or emphasized. It was not stressed in the State's closing argument. The jury was instructed that they were the sole judges of the credibility of the witnesses on several occasions. Most significantly, the State's case was strong. The complainant gave detailed and consistent testimony regarding the incident of abuse, her outcry was timely and corroborated by her mother and grandmother, and both a forensic interviewer and a pediatric abuse physician supported her account. Additionally, the evidence contained Marfil's text messages that expressed regret and emotional conflict—evidence the jury could reasonably interpret as inconsistent with innocence. This is not a case where improper comments tipped the balance. The conviction rested on substantial direct and circumstantial evidence. Even if the error had been preserved and the opinion improper, it did not have a substantial effect on the jury's decision.

## CONCLUSION

Appellant failed to preserve his complaint for review. Even assuming the objection was sufficient, and the testimony was improper, the record does not support a finding that the error affected the outcome. Accordingly, we overrule Appellant's issue and affirm the judgment of the trial court.

H. Todd McCray, Justice

DO NOT PUBLISH